[Sac. No. 4877. In Bank.—July 21, 1934.]

UNITED BANK AND TRUST COMPANY OF CALIFOR-
NIA (a Corporation), Respondent, v. A. P. HUNT
et al., Appellants.

Francis C. Brown, J. Oscar Goldstein and Ray Manwell for Appellants.

Keyes & Erskine, Butler, Van Dyke, Desmond & ·Harris and Rich, Weis & Carlin for Respondent.

WASTE, C. J.—This cause was taken over, upon petition, after a decision in the District Court of Appeal, Third Appellate District. Upon a reading of the record, and an examination of the authorities, we are satisfied that the opinion of that court, prepared by Mr. Presiding Justice Pullen, reached a correct conclusion upon the issue presented. We therefore adopt the following portions of the opinion of the District Court of Appeal as and for the decision of this court:

"This controversy arises out of an agreement between appellants and cross-complainants, hereinafter referred to as the Hunts, and United Bank and Trust Company, now known as the Bank of America National Trust & Savings Association, a corporation, cross-defendants and respondents, hereinafter referred to as the Bank.

"Some time prior to April, 1924, the Hunts were the owners of an undivided one-half interest in three parcels of farm lands in Butte county and held a lease upon the other one-half interest thereof. The lands were known as the adobe ranch and referred to as parcel I in the agreement, the home place referred to as parcel II and the upper place designated as parcel III.

"In 1924 all of the property was subject to a deed of trust to secure an indebtedness to the Bank of $45,000 and there were in addition, liens for water supplied for irrigation and certain unsecured notes due from the Hunts to the Bank.

"In April of that year the parties met and adjusted their financial relations, which resulted in the execution of the following instruments:

"1. A promissory note for approximately $14,000 in favor of the Bank, which included the amounts due for water and various unsecured notes. There was also included $2,500, an agreed future advance for irrigation water, and $1,000 which the Bank agreed to advance to finance the farming operations on the home place.

"2. A chattel mortgage as security for the foregoing amounts covering all of the farming equipment of the Hunts.

"3. A crop mortgage covering all of the crops to be grown during the season of 1924 by the Hunts on the home place, and any interest they might have in any crops grown on the adobe ranch.

"4. A written agreement whereby the Bank was to make the future advance referred to; to suspend foreclosure under the trust deed for a reasonable time; to negotiate a lease with C. A. Bayless as tenant on the adobe ranch on a crop-sharing basis; to protect the Hunts against foreclosure on any water liens, and to endeavor to secure for the Hunts the repayment of money expended by them for plowing on the leased premises. The Hunts on their part agreed to apply on the indebtedness all of the proceeds from the crops raised on the home place, and to execute all necessary papers to consummate the agreement.

"Thereafter differences arose between the parties, principally as to a tenant for the adobe ranch, and the Bank treating the agreement as having been abrogated, caused the property to be sold under its deed of trust. The property failed to bring the full amount of the note with interest and other advances, and in March, 1925, the Bank brought an action in Sacramento county against the Hunts for this deficiency in the sum of $14,378.37. This action was transferred to Yuba county, and is hereinafter referred to as the Yuba county case. To that complaint the Hunts in

June, 1928, filed an answer admitting the execution of the trust deed, and a cross-complaint and counterclaim praying for judgment against the Bank, alleging a claim for damages for loss of the crop on parcel II by reason of the Bank's failure to advance the money for planting and water charges; a claim for damages for loss of anticipated profits from the Bayless lease on parcel I, due to the failure of the Bank to complete the negotiations for the lease and for its act in wilfully inducing Bayless not to enter into the lease; a claim for damages arising out of the foreclosure under the deed of trust in alleged violation of the agreement wherein the Bank undertook to withhold foreclosure for a reasonable time, and a claim for damages for foreclosing a chattel mortgage after failure to advance the money which was the sole consideration thereof, all in the sum of $89,800.

"In the meantime, and a few months after the Bank had filed the Yuba county case against the Hunts, they, in October, 1925, filed a complaint against the Bank in Butte county. In that complaint the Hunts set out *in haec verba* the agreement of 1924, and alleged they had done the various acts imposed upon them by the agreement, but that the Bank retook the seed rice they had obtained for cropping parcel II, refused to furnish any money to pay for the water charges upon said land or for the planting and harvesting of the crops thereon, and in violation of their agreement, advertised the lands for sale under the deed of trust and caused the property to be sold by the trustees in March, 1925.

"The answer of the Bank admitted the execution of the agreement and set up a counterclaim of $14,378.37 which it claimed was due as a deficiency under the deed of trust after it had sold parcels I, II and III. This counterclaim was identical with the complaint filed in the Yuba county case. Nothing was done in the Butte county case until March 9, 1928, when the present attorneys for the Hunts, having in the meantime been substituted for their original attorneys, moved to file an amended complaint, which was by the court denied. The proposed amended complaint was virtually identical with the cross-complaint and counterclaim in the Yuba county case.

"Upon motion of the Bank and over the objection of the Hunts, the Butte county case was set for trial. In opposition to the setting of the Butte county case it was contended by the Hunts that the action in Butte county, if based upon the original complaint, would not present all of the claims for damage which the Hunts had against the Bank, and that the action in Butte county should not be tried before the Yuba county action was tried, as a judgment in Butte county might be construed as an estoppel and *res judicata* against the action pending in Yuba county; that the Butte county case should be consolidated with the Yuba county case and all of the issues between the parties there determined. However, the motion to amend, postpone or consolidate was denied and the cause proceeded to trial, and upon appeal the Hunts were awarded a judgment against the Bank for $14,132.54 (*Hunt* v. *United Bank & Trust Co.*, 210 Cal. 108 [291 Pac. 184]), reference to which is made for a clear statement of the facts of that case and the issues submitted and determined therein.

"Thereafter and in October, 1931, the Hunts caused the issues pending in Yuba county to be brought to trial, and at the conclusion of the trial upon the issues raised by the cross-complaint, the court granted a nonsuit against the Hunts, and from that judgment this appeal is prosecuted.

"Upon the theory that the judgment in Butte county was a bar to the action in Yuba county the trial court sustained objections to the introduction of the evidence submitted by the Hunts upon the cross-complaint at the Yuba trial. We believe the trial court in this was in error. The issues tried in Butte county were limited to a single issue of the damages sustained by the Hunts through the loss of the rice crop on the home place. This is apparent from the pleadings, the complaint alleging 'that by said wrongful violation by defendant as hereinabove set forth and that said failure to comply with the terms thereof . . . plaintiffs were unable to farm any of said lands and were damaged in the sum of $20,000.00'. It will be recalled in that connection that the only lands the Hunts were to farm according to the agreement was parcel II, the home place. And in the opinion in the case of *Hunt* v. *United Bank & Trust Co.*, *supra*, the court said: 'The result was

that the home place was not farmed during the 1924 season and Hunt lost his rice crop. Defendant then caused the lands to be sold under its deed of trust. Plaintiff thereupon brought this action to recover damages in the sum of $20,000.00 from defendant by reason of the loss of the crop.' Under the agreement between the parties the Bank was obligated to advance money to farm parcel II, to negotiate a lease to Bayless on parcel I, and to withhold foreclosure on the deed of trust.

. . . . . . . . . . . .

"Therefore, the Butte county case having been confined to a single issue of damages arising out of the failure of the Bank to advance the money necessary for planting the rice crop and for the water charges as agreed on one parcel, it does not appear that anything pertinent to the Yuba county action was 'actually and necessarily included' in the judgment in the Butte case.

"We are . . . of the opinion that the Bank waived its right to raise the question of *res judicata* in the Yuba county case by its opposition to the motion to amend the Butte county case to include therein the various causes of action set forth in the Yuba county case, and by opposing a motion to try the two cases together.

"Where counsel by timely notice call to a court's attention the pendency of other proceedings covering kindred matters and strive to have the same embraced within the scope of the inquiry, and such attempt is successfully blocked by opposing counsel and the trial proceeds to the investigation of the specific issue before the court, counsel who were successful in preventing the consolidation of the issues cannot be heard later to object to a trial of the related matters upon the ground of *res judicata*. The course pursued by the court and counsel in the Butte county case was tantamount to an express determination on the part of the court with the consent of opposing counsel to reserve the issues involved for future adjudication. (*Asher* v. *G. F. Stearns etc. Co.*, 241 Ky. 292 43 S. W. [2d] 1012.) Litigants cannot successfully assume such inconsistent positions.

" 'The rule against splitting a cause of action is for the benefit of the defendant and he may waive it or renounce it by agreement with plaintiff.' (34 Cor. Jur. 829.) "

In *Southern Pac. Co.* v. *Edmunds,* 168 Cal. 415, 418 [143 Pac. 597], the rule is stated as follows: ''The rule undoubtedly is that a former judgment between the parties to an action is conclusive in all subsequent actions involving the same question, not only as to the matters actually decided in the former controversy, but as to all matters belonging to the subject· of the controversy and properly within the scope of the issues which also might have been raised and determined; the presumption being that all such issues were presented and decided. (*Bingham* v. *Kearney,* 136 Cal. 175 [68 Pac. 597] ; *Rucker* v. *Langford,* 138 Cal. 611 [71 Pac. 1123].)

''As to matters, however, which might have been litigated and decided in a former suit as within the scope of the issues, but which were not actually or expressly in issue and adjudicated, only a presumption is indulged in that they were decided. This presumption is, however, a disputable one and may be overcome by showing that although a particular matter was involved in the former action, it was by consent of the parties withdrawn from consideration at the trial and did not at all enter into or constitute any part of the verdict of the jury or final determination of that action. If this is the situation here, defendant certainly cannot invoke the doctrine of *res adjudicata* against the assertion by plaintiff in this action of a right to the credit claimed. He cannot assert the conclusiveness of the former judgment on that matter if he consented with plaintiff that it might be withdrawn from consideration by the jury as an issue in the former action and it was in fact withdrawn.''

The appellants therefore contend that it was error for the court to exclude the proffered testimony of witness Brown in the present case as to what had taken place before the court in the Butte case relative to a continuance or to consolidating the Butte and Yuba cases, the testimony there admitted and what was said and done by counsel for the Bank in opposition thereto. We believe the evidence was proper to determine whether or not defendant had waived or renounced the benefit of the rule.

It is also a general rule that either parol evidence or a reporter's transcript is admissible to show what matters provable under the issues of a case were or were not

submitted to a jury as an aid in determining whether a judgment acts as a bar to another action, and for that reason also the court should have permitted the testimony of Brown to have been received. (*Goodman* v. *Dam,* 112 Cal. App. 244 [296 Pac. 623]; *People* v. *Bailey,* 30 Cal. App. 581 [158 Pac. 1036]; *Meredith* v. *Santa Clara Min. Assn.,* 56 Cal. 178.)

The judgment of nonsuit on the counterclaim and cross-complaint of the appellants was error. The judgment is therefore reversed and the cause remanded for a new trial.

Shenk, J., Thompson, J., and Curtis, J., concurred.

Rehearing denied.