[No. C030874. Third Dist. Feb. 28, 2002.]

AEROJET-GENERAL CORPORATION, Plaintiff and Appellant, v.
AMERICAN EXCESS INSURANCE CO. et al., Defendants and
Respondents.

388

COUNSEL

Nossaman, Guthner, Knox & Elliot, Scott P. Devries, Tad Pethybridge; and José N. Uranga for Plaintiff and Appellant.

Hancock Rothert & Bunshoft, Richard L. Seabolt, Brian A. Kelly, Max H. Stern and Robert M. Fineman for Defendant and Respondent Cheshire Companies.

Boornazian, Jensen & Garthe and Bruce Winkleman for Defendant and Respondent American Excess Insurance Co.

Cozen O'Connor and Forrest Booth for Defendants and Respondents Everest Reinsurance Company and Mt. McKinley Insurance Company.

Crosby, Heafey, Roach & May and Joseph P. Mascovich for Defendants and Respondents Northbrook Excess and Surplus Insurance Company, Hartford Accident and Indemnity Company, First State Insurance Company, New England Reinsurance Corporation, Twin City Fire Ins. Co. and Old Republic Insurance Company.

Gibson, Dunn & Crutcher and Rebecca Sanhueza for Defendant and Respondent Gibraltar Casualty Company.

Bishop, Barry, Howe, Haney & Ryder and Jeffrey N. Haney for Defendants and Respondents Aetna Casualty Insurance Co., Commercial Union Insurance Company for Falcon Insurance Company.

Hoge, Fenton, Jones & Appel and Frank S. Montes, Jr., for Defendant and Respondent Protective National Insurance Company of Omaha.

Law Offices of James B. Clapp and James B. Clapp for Defendant and Respondent California Insurance Guarantee Association.

Lewis D'Amato, Brisbois & Bisgaard, Correll and Garchie, Jenelle Garchie and Thomas Correll for Defendant and Respondent Federal Insurance Company.

Lillick & Charles, Nixon Peabody, Louise McCabe and James Forbes for Defendants and Respondents Home Insurance Company and City Insurance Company.

Lynberg & Watkins, R. Jeff Carlisle and David K. Morrison for Defendants and Respondents AIU Insurance Company, American Home Assurance Co., American International Reinsurance Co. Limited, Granite State Insurance Co., Insurance Company of the State of Pennsylvania, National Union Fire Insurance Co. of Pittsburgh, PA, New Hampshire Insurance Co., Landmark Insurance Company and Lexington Insurance Company.

Kaufman & Logan and Maureen P. McGee for Defendant and Respondent Evanston Ins. Co.

Lawrence, Berman & Aiwasian and Cynthia Keener for Defendants and Respondents Insurance Company of North America, Central National Insurance Company of Omaha, Indemnity Insurance Company of Omaha and Indemnity Insurance Company of America.

Morris, Polich & Purdy, Berkes, Crane, Robinson & Seal and Steven M. Crane for Defendants and Respondents Continental Insurance Company, Fidelity & Casualty Company of New York, Continental Casualty Company, Columbia Casualty Company, Transcontinental Insurance Company and Harbor Insurance Company.

Newton, Kastner & Remmel and Stephen L. Newton for Defendant and Respondent Associated International Insurance Company.

Rivkin, Radler & Kremer, Rivkin & Radler and George J. Keller for Defendants and Respondents Fireman's Fund Insurance Company and Chicago Insurance Company.

Sedgwick, Detert, Moran & Arnold and Roger Sleight for Defendant and Respondent Allianz Underwriters Insurance Company.

Skadden, Arps, Slate, Meagher & Flom, Thomas R. Harrell and Irene Sullivan for Defendants and Respondents General Reinsurance Co. and North Star Reinsurance Corporation.

Blackwell, Sanders, Matheny, Weary & Lombardi, Blackwell Sanders Peper and Martin, H. Fred Northcraft, Mark V. Dugan; Wilke, Fleury, Hoffelt, Gould & Birney and Alan G. Perkins for Defendant and Respondent The Seven Provinces Insurance Company, Ltd.

Cyril & Rowley and Carol P. Rohwer for Defendant and Respondent Republic Indemnity Company of America.

Luce, Forward, Hamilton & Scripps and Cathy L. Croshaw for Defendant and Respondent Westport Insurance Corporation.

Preuss, Walker & Shanagher, John Powers; Sonnenschein, Nath & Rosenthal and Paul E. B. Glad for Defendants and Respondents International Insurance Company, International Surplus Lines Insurance Company, Industrial Underwriters Insurance Company and United States Fire Insurance Company.

Ropers, Majeski, Kohn, Bentley, Wagner & Kane and Kevin McCurdy for Defendant and Respondent Transport Indemnity Company.

## OPINION

**KOLKEY, J.**—Plaintiff Aerojet-General Corporation (plaintiff or Aerojet) appeals from a judgment of dismissal entered after the trial court sustained, without leave to amend, a demurrer brought by the defendant insurers (defendants or insurers). The demurrer was sustained on the ground that Aerojet's present action for declaratory relief was barred by principles of res judicata as a result of an earlier declaratory judgment that had concluded that Aerojet was not entitled to relief from the same defendants.

In the prior action, *Aerojet-General Corp. v. Transport Indemnity Co.* (1998) 17 Cal.4th 38 [70 Cal.Rptr.2d 118, 948 P.2d 909] (*Transport*), Aerojet sought a declaration of the insurers' coverage obligations for present and potential claims arising out of the discharge of chemical waste from the 1950's to the 1980's at or from property owned by Aerojet in eastern Sacramento County. Following a jury verdict, the trial court entered a judgment that held that the defendants—the same insurers sued in this action—"have no duty or obligation to indemnify Aerojet for any liability that Aerojet has incurred or may incur arising out of the alleged release of waste materials at or from property occupied at one time or another by Aerojet in Eastern Sacramento County . . . ."

In the present action, Aerojet seeks a declaration that it is entitled to insurance coverage for new claims brought against it by private landowners, who allege that from the 1950's to the 1980's, harmful chemicals, including ammonium perchlorate, were discharged into the groundwater at a site owned by plaintiff in eastern Sacramento County. In seeking such a declaration, Aerojet disputes the scope of the judgment entered in the *Transport* action, claiming that ammonium perchlorate was not one of the chemicals at issue in the *Transport* action, that the method of disposal of the ammonium perchlorate (burning) was different from the method of disposal (dumping) at issue in the *Transport* action, and that a site of the pollution in the instant case—the McDonnell Douglas/Inactive Rancho Cordova Test Site property—is different from the site litigated in *Transport*.

As we shall explain, whatever the validity of Aerojet's objection to the breadth of the *Transport* judgment, the time for Aerojet to have objected was before the judgment became final. Having elected not to pursue an appeal over the scope of that judgment, Aerojet may not now seek to mount a collateral attack on the breadth of that judgment. (*Kupfer v. Brawner* (1942) 19 Cal.2d 562, 564 [122 P.2d 268].) Once the judgment became final, a collateral attack on it for nonjurisdictional error is not permitted. (8 Witkin,

Cal. Procedure (4th ed. 1997) Attack on Judgment in Trial Court, § 6, p. 514.) The invocation of a final judgment as res judicata in a subsequent action is not an invitation to the losing party to collaterally attack the judgment on nonjurisdictional grounds, ironically defrocking the judgment of the very finality upon which the res judicata doctrine depends.

Moreover, the application of the doctrine of res judicata to declaratory judgments, while more narrow than for other judgments, nonetheless extends to the matters declared on the face of the judgment, as well as to any issue actually litigated and determined in that prior action. (Rest.2d Judgments, § 33, p. 332.) The matters declared on the face of the *Transport* judgment unequivocally cover the disputes raised in the present action.

Finally, even if the language of the *Transport* judgment were not deemed to unequivocally encompass the disputes raised in the present action, and we were to examine the record to determine the judgment's scope, Aerojet's present action for declaratory relief would be barred by res judicata because coverage for pollution caused by ammonium perchlorate on property occupied by Aerojet in eastern Sacramento County had clearly been placed at issue in the *Transport* litigation. Admittedly, the *Transport* litigation focused on pollution caused by the discharge of three chemicals in particular—trichloroethylene (TCE), ethylene dichloride (EDC), and N-nitrosodimethylamine (NDMA). But the gravamen of the action, as framed by Aerojet's pleading, was whether defendants had an obligation to provide insurance coverage for any claims arising out of chemical releases on any property owned or operated "at one time or other" by Aerojet in eastern Sacramento County. Aerojet specifically asked the *Transport* jury for a ruling that would be so broad in scope that it would avoid a future lawsuit about insurance coverage for *any* chemical pollution, *including that caused by ammonium perchlorate*. It received such a judgment, albeit not one to its liking, and may not now relitigate the issue.

Accordingly, we shall affirm the judgment of dismissal.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. *General Background*

The *Transport* judgment was the culmination of a course of litigation beginning in 1979. In that year, the State of California brought an action against Aerojet under the Porter-Cologne Water Quality Control Act based on chemical waste contamination. (*Transport, supra,* 17 Cal.4th at p. 47.)

Beginning in 1980, a number of private individuals filed damage actions against Aerojet, charging that throughout the course of Aerojet's operations from the early 1950's to the 1980's, Aerojet had discharged numerous hazardous substances in an ongoing fashion at its eastern Sacramento County property and thereby caused pollution in and around that location, resulting in continuous and/or progressively deteriorating bodily injury and/or property damage. (*Transport, supra,* 17 Cal.4th at p. 47.)

In 1986, the federal government brought an action against Aerojet under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (42 U.S.C. § 9601 et seq.) (CERCLA), seeking to require Aerojet to remedy the pollution and its effects at its Sacramento site and to reimburse the United States for its removal and remedial costs. (*Transport, supra,* 17 Cal.4th at p. 47.) Simultaneously, the State of California brought a parallel CERCLA action, seeking reimbursement to the state for the costs that the latter had and would incur in remedying the effects of the pollution. (*Ibid.*)

## II. *The First Declaratory Relief Action: The Transport Action*

In 1982, one of Aerojet's insurers, Transport Indemnity Company and Associated International Insurance Company (Transport), filed a complaint against Aerojet and others for declaratory relief in the San Mateo County Superior Court, seeking, inter alia, a determination that it was not obligated to provide Aerojet with either a defense or indemnity for the private and governmental claims asserted against Aerojet. (*Transport, supra,* 17 Cal.4th at p. 46.)

In turn, Aerojet filed a cross-complaint, later amended, against its 54 insurers, under 245 comprehensive general liability and other insurance policies, seeking a declaration that it was entitled to indemnification and a defense with respect to those private and governmental actions. (*Transport, supra,* 17 Cal.4th at pp. 46-47.)

Following much procedural maneuvering, Transport's complaint for declaratory relief was dismissed. The amended cross-complaint filed by Aerojet became the definitive pleading by which Aerojet sought a declaration that it was entitled to coverage for claims, private and governmental, "present and potential," related to pollution on property occupied "at one time or other" by Aerojet in eastern Sacramento County. (*Transport, supra,* 17 Cal.4th at p. 48.)

The matter finally came to trial in 1991. A lengthy jury trial ensued, extending over 81 days and encompassing 14,000 pages in reported transcript.[1] As is pertinent to our discussion here, the evidence established that throughout the course of Aerojet's operations from the early 1950's to the 1980's, hazardous substances had in fact been discharged in an ongoing fashion at Aerojet's site in eastern Sacramento County and that such substances had caused pollution in and around that location. (*Transport, supra,* 17 Cal.4th at p. 50.)

The jury returned a verdict rejecting Aerojet's right to indemnification, following which the trial court entered judgment declaring that the defendant insurers "have no duty or obligation to indemnify Aerojet for any liability that Aerojet has incurred or may incur arising out of the alleged release of waste materials at or from property occupied at one time or another by Aerojet in Eastern Sacramento County . . . ." A similar declaration was made concerning the absence of any obligation by the insurers to *defend* against any present or potential claim against Aerojet.

Aerojet challenged the scope of the judgment entered, but the trial court rejected Aerojet's argument, noting that Aerojet had framed its claims broadly in seeking coverage for present and future liability. Aerojet then appealed over the substance, *but not the scope,* of the judgment. That part of the judgment relevant to the issues presented in this case was affirmed, first by the Court of Appeal, and then by the California Supreme Court. (*Transport, supra,* 17 Cal.4th at p. 77; *id.* at p. 81 (conc. and dis. opn. of Kennard, J.).)

### III. *The Allen Suit*

In December 1997, various private landowners, lessees, or occupants of property in Rancho Cordova within a five-mile radius of the Aerojet Sacramento site filed yet another suit against Aerojet and others (including McDonnell Douglas Corporation) for personal injuries allegedly caused by the "improper use and disposal" of TCE and other chemicals, including ammonium perchlorate, on property owned or operated by Aerojet in eastern Sacramento County. (*Allen v. Aerojet-General Corp.* (Super. Ct. Sacramento County, 1997, No. 97AS06295 (*Allen*).) The *Allen* suit alleged that Aerojet and McDonnell Douglas used portions of a site "located east of Sacramento"

---

[1]This 81-day trial was the second phase of the litigation, which addressed the issue of coverage. (See *Transport, supra,* 17 Cal.4th at pp. 48-51.) In that connection, we deny defendants' motion to augment the record on appeal with a videotape of excerpts of the attorneys' closing arguments at the trial, but grant the motion with respect to the copy of the topographic map of the Aerojet site already part of the appellate record in this case.

within Sacramento County at which they allowed toxic substances to enter the ground. It alleged causes of action for, among others, negligence, strict liability, trespass, and public and private nuisance in connection with the contamination of the site.

### IV. *The Present Proceeding*

Aerojet, in turn, filed the instant complaint in January 1998 against the defendant insurers for declaratory relief and breach of contract relating to the question of coverage for Aerojet's potential liability in *Allen.*

Defendants demurred to Aerojet's complaint, arguing that the principle of res judicata barred the action because *Transport* was a final adjudication of the issue of coverage for damages caused by chemical releases on the same property that was the subject of the *Allen* litigation.

The trial court agreed with defendants, concluding that "[s]ince this action . . . involves the alleged release of waste materials from property owned by plaintiff at one time or another in Eastern Sacramento County, it falls squarely within the scope of matters declared in the judgment in the *Transport* action." The court further ruled that "[s]ince the judgment is clear on its face and no examination of the record is required, the Court has not determined whether particular chemicals or particular sites were or were not actually litigated and determined in the *Transport* action. Those matters are within the scope of the *Transport* judgment. . . . The law does not permit a party to relitigate a case it has lost."

Aerojet appeals.[2]

### DISCUSSION

■ Aerojet contends that "a declaratory judgment only has preclusive effect on the disputed issues that were [actually] litigated." Therefore, Aerojet argues, since "[t]he McDonnell Douglas site was not at issue" and "perchlorate damage was not litigated" in *Transport*, it follows that "this new insurance coverage lawsuit is not barred."

### I.

■ "The doctrine of *res judicata* gives certain *conclusive effect* to a *former judgment* in subsequent litigation involving the same controversy. It

---

[2]During the pendency of this appeal, Aerojet settled with the following defendants, which have been ordered or are ordered dismissed from this appeal pursuant to their stipulations with Aerojet: Century Indemnity Company; Westport Insurance Corporation; Republic Indemnity Company of America; Certain Underwriters at Lloyd's, London; Certain London Market Insurers; and Transport Indemnity Company.

seeks to curtail multiple litigation causing vexation and expense to the *parties* and wasted effort and expense in *judicial administration.* It is well established in common law and civil law jurisdictions, and is frequently declared by statute." (7 Witkin, Cal. Procedure, *supra,* Judgment, § 280, p. 820, italics in original.)

The instant action seeks declaratory relief against the same insurers that are parties to the *Transport* judgment, albeit with respect to their obligation to indemnify Aerojet for its potential liability in the *Allen* action. The *Allen* action, in turn, seeks damages for contamination caused by Aerojet's "improper use and disposal of toxic chemicals throughout portions of" an Aerojet-operated site "east of Sacramento" in Sacramento County.

However, the language of the *Transport* judgment clearly covers the insurers' obligations arising from the *Allen* action because the *Transport* judgment covers both past and *future* claims arising from the release of chemicals at or from property occupied *at any time* by Aerojet *in eastern Sacramento County.* Specifically, the *Transport* judgment states: "[D]efendants have no duty or obligation to *indemnify* Aerojet for any liability that Aerojet has incurred or *may incur* arising out of the alleged release of waste materials at or from property occupied *at one time or another* by Aerojet in Eastern Sacramento County . . . ." (Italics added.) It further states that the insurers "have and have had no obligation to *defend,* investigate or to pay the costs of the defense or investigation of any claim, *present or potential,* against Aerojet arising out of the alleged release of waste materials at or from property occupied *at one time or other* by Aerojet in Eastern Sacramento County . . . ." (Italics added.)

Because the instant action involves the same insurers with respect to their obligations to either pay the costs of defense for, or indemnify Aerojet for, the claims raised in the *Allen* action—which concerns the alleged release of waste materials from Aerojet-operated property in eastern Sacramento County—it squarely falls within the scope of the matters declared in the *Transport* judgment. The *Transport* judgment neither limits the types of waste materials covered nor the extent of Aerojet's property in eastern Sacramento County. Indeed, the *Allen* action, which is attached as an exhibit to Aerojet's present declaratory relief action, makes clear that the McDonnell Douglas/Inactive Rancho Cordova Test Site is part of Aerojet's eastern Sacramento site and was originally owned by Aerojet, leased to and later purchased by McDonnell Douglas, and transferred back to Aerojet during the relevant period.

Throughout its appellate brief, Aerojet objects to the scope of the *Transport* judgment, claiming that its breadth encompasses matters—e.g., a particular chemical, a particular method of disposal, and a particular site—not litigated in the *Transport* action.

But it is too late in the day for Aerojet to object to the scope of the *Transport* judgment. The appropriate time to have challenged that judgment was while the case was pending. As the California Supreme Court has long held: "If there was any error in the judgment rendered in those proceedings, it was an error committed in the exercise of the court's jurisdiction, which could have been corrected only on an appeal from the judgment or other timely and direct attack thereon; but the judgment, having become final, is not subject to review in another action for error committed in the exercise of the court's jurisdiction." (*Kupfer v. Brawner, supra,* 19 Cal.2d at p. 564.) Although Aerojet claims neither the "issue of perchlorate damage" nor the McDonnell Douglas/Inactive Rancho Cordova Test Site was at issue in the *Transport* trial, "a judgment rendered in an action in personam by a court having jurisdiction over the subject matter and the parties is not . . . subject to collateral attack merely because it may erroneously determine some matter not specifically raised in the pleadings, and not covered by the evidence before the trial court, and . . . such a judgment is res judicata." (*Greenfield v. Mather* (1948) 32 Cal.2d 23, 35 [194 P.2d 1].)

For reasons known only to Aerojet, it elected not to challenge the scope of the *Transport* judgment when the case was on appeal. (*Locke v. Warner Bros, Inc.* (1997) 57 Cal.App.4th 354, 368 [66 Cal.Rptr.2d 921] [Issues not raised on appeal are waived].) ██ Now that the *Transport* judgment is final, a collateral attack on the judgment for a nonjurisdictional error is not permitted. (8 Witkin, Cal. Procedure, *supra,* Attack on Judgment in Trial Court, § 6, p. 514.)[3] The invocation of a final judgment as res judicata in a subsequent action is not an invitation to the losing party to attack the judgment for nonjurisdictional error, ironically defrocking the judgment of the very finality upon which the res judicata doctrine depends.

Citing *Goodman v. Dam* (1931) 112 Cal.App. 244, 246, and *United Bank & Trust Co. v. Hunt* (1934) 1 Cal.2d 340, 346-347 [34 P.2d 1001], Aerojet argues, however, that "California law specifically provides that when deciding whether *res judicata* applies to bar a new lawsuit, courts do not merely

---

[3]There is, of course, a right to set aside a judgment after it has become final for extrinsic fraud, but that is considered a direct attack (not a collateral attack) on the judgment and is not at issue here. (8 Witkin, Cal. Procedure, *supra,* Attack on Judgment in Trial Court, § 214, p. 719.) Except in the case of extrinsic fraud, "[a] judgment on the merits that is not void on its face and [thus] subject to collateral attack is protected by the doctrine of res judicata after the time for ordinary direct attack has passed." (*Id.* at p. 718.)

look at the face of the prior judgment, but consider the entire record of the prior case."

A careful review of the case law suggests, however, that this is not the case when the prior judgment, entered in the exercise of the court's jurisdiction, *unambiguously* covers the new action. (See *Casad v. Qualls* (1977) 70 Cal.App.3d 921, 929 [139 Cal.Rptr. 243].) ■ It is " ' "[i]n case of doubt regarding the signification of a judgment, or any part thereof, [that] the whole record may be examined for the purpose of removing the doubt." ' " (*Casad v. Qualls, supra,* 70 Cal.App.3d at p. 929, quoting 1 Freeman on Judgments, § 45.) But where the prior judgment is unambiguous, resort to the record is unnecessary to determine the scope of that which is unambiguous, and would instead serve only to claim that the judgment is erroneous in some fashion. And that would directly conflict with the principle that a final judgment is not subject to review in another action for an alleged error committed in the exercise of the first court's jurisdiction. (E.g., *Kupfer v. Brawner, supra,* 19 Cal.2d at p. 564.)

Significantly, neither *United Bank & Trust Co. v. Hunt, supra,* 1 Cal.2d 340, nor *Goodman v. Dam, supra,* 112 Cal.App. 244, cited by Aerojet here, concerned the application of the res judicata doctrine to an unambiguous prior judgment.

Instead, *Goodman v. Dam, supra,* 112 Cal.App. 244, addressed whether a cause of action was covered by a vaguely worded prior judgment; the Court of Appeal ruled that if an inspection of the judgment roll " ' "fails to disclose all the facts necessary to a complete determination of the question [of res judicata], a resort may be had to extrinsic evidence." ' " (*Goodman v. Dam, supra,* 112 Cal.App. at p. 247.)

In a somewhat similar vein, *United Bank & Trust Co. v. Hunt, supra,* 1 Cal.2d 340, ruled that evidence of what had taken place at a prior trial was relevant to determine whether the defendant had waived by stipulation the right to invoke res judicata as to those matters that might have been raised at that trial: " 'As to matters, however, which might have been litigated and decided in a former suit as within the scope of the issues, but which were not actually or expressly in issue and adjudicated, only a presumption is indulged in that they were decided. This presumption . . . may be overcome by showing that . . . it was by consent of the parties withdrawn from consideration at the trial and did not at all enter into or constitute any part of the verdict of the jury or final determination of that action.' " (*United Bank & Trust Co. v. Hunt, supra,* 1 Cal.2d at p. 346.)

 In contrast, the judgment entered in *Transport* is not ambiguous. Nor is there any claim that the right to invoke res judicata was waived pursuant to stipulation. Aerojet makes no claim that the particular chemicals involved in the instant proceeding do not fall within the reach of the phase "waste materials" used in the *Transport* judgment, or that the property involved in this action fails to fall within the reach of the phrase "property occupied at one time or another by Aerojet in Eastern Sacramento County," as used in the *Transport* judgment. Indeed, at oral argument, Aerojet conceded that the language of the judgment covers the insurance coverage claims it seeks to litigate here.

Quoting *Goddard v. Security Title Ins. & Guar. Co.* (1939) 14 Cal.2d 47, 54 [92 P.2d 804] (*Goddard*), Aerojet argues that "the doctrine of *res judicata* would disappear as a legal principle, and the bar of a judgment would depend wholly upon the whim of the first judge" (original italics) if the intention of the court, as gathered from its order, were the test of the effect of a judgment on subsequent actions. But that statement in *Goddard* was in the context of determining whether a judgment was on the merits. The California Supreme Court in *Goddard* ruled that "even a judgment on general demurrer may not be on the merits" and thus not res judicata (14 Cal.2d at pp. 52, 53); accordingly, it held that notwithstanding the language of the judgment, "it is the nature of the action and the character of the judgment that determines whether it is *res judicata*. The intention of the court to make a determination *on the merits* may be important, but if the judgment is clearly not on the merits, the court's intention to make it a *bar* is immaterial." (14 Cal.2d at p. 54, original italics.)

There is no question, however, that the *Transport* judgment is on the merits in this case. And after an 81-day trial, it would be absurd to argue otherwise. Thus, *Goddard* is of no assistance to Aerojet.

Aerojet argues, however, that the *Transport* judgment "was not 'on the merits' " with respect to perchlorate damage or the McDonnell Douglas site and thus that *Goddard* applies and allows an examination of the evidence introduced at the *Transport* trial, instead of reliance on the language of the resulting judgment. But this argument misconceives the concept of a judgment on the merits for purposes of the res judicata doctrine. It is the judgment that must be rendered on the merits (7 Witkin, Cal. Procedure, *supra,* Judgment, § 313, pp. 864-865), not every point encompassed by it; otherwise, that portion of a final judgment rendered on the merits which erroneously determined a matter not in the pleadings or which was contrary to the evidence would not be final, contrary to the settled authority which we

have expounded. (E.g., *Federated Department Stores, Inc. v. Moitie* (1981) 452 U.S. 394, 398 [101 S.Ct. 2424, 2427-2428, 69 L.Ed.2d 103, 109]; *Greenfield v. Mather, supra,* 32 Cal.2d at p. 35; 7 Witkin, Cal. Procedure, *supra,* Judgment, § 313, pp. 864-865.)

Accordingly, since the judgment entered in *Transport* is unambiguous, there is no need to resort to the record to determine what the *Transport* judgment declared. Now final, that judgment is res judicata and is not subject to collateral attack merely because it may have erroneously determined a matter not covered by the evidence. (*Greenfield v. Mather, supra,* 32 Cal.2d at p. 35.)[4]

## II.

We could end our analysis here. But Aerojet expends much of its appellate brief arguing that "the ' "merger and bar" aspect of *res judicata* does not apply to declaratory judgments' " and that "[i]f the merger-and-bar (claim preclusion) aspect of *res judicata* does not apply, the only other aspect, collateral estoppel (issue preclusion) must." Accordingly, Aerojet reasons that with respect to a declaratory judgment—regardless of the scope of that judgment—"[a] party cannot be estopped from litigating an issue that was not *actually* litigated" (original italics), and thus that it is entitled to seek declaratory relief concerning insurance coverage for damages from perchlorate and for claims arising from the McDonnell Douglas site, neither of which, it contends, was litigated in the *Transport* action.

## A.

 It is true that in California "res judicata is said to have two aspects, its primary aspect of bar and merger and the secondary aspect of collateral estoppel." (*Branson v. Sun-Diamond Growers* (1994) 24 Cal.App.4th 327, 340 [29 Cal.Rptr.2d 314].)

---

[4]While there is some limited authority for the proposition that "in rare cases a judgment may not be res judicata, when proper consideration is given to the policy underlying the doctrine [of res judicata]" (*Greenfield v. Mather, supra,* 32 Cal.2d at p. 35), this exception cannot be invoked in this case. First, the California Supreme Court has subsequently observed that this doctrine is "of doubtful validity and . . . has been severely criticized." (*Slater v. Blackwood* (1975) 15 Cal.3d 791, 796 [126 Cal. Rptr. 225, 543 P.2d 593].) Second, " '[t]he principle underlying the rule of claim preclusion is that a party who once has had a chance to litigate a claim before an appropriate tribunal usually ought not to have another chance to do so.' " (7 Witkin, Cal. Procedure, *supra,* Judgment, § 284, p. 824, citing the Restatement Second of Judgments.) In this case, the allegedly omitted issues were, in fact, placed before the trial court in the *Transport* litigation. (See pt. III, *post.*) Thus, having chosen to seek as broad a judgment as it could with respect to insurance coverage for claims arising out of the release of chemical waste on its eastern Sacramento County property, Aerojet cannot claim that the policy underlying res judicata does not apply.

Under the merger-and-bar aspect of res judicata, a matter is deemed to be conclusively decided by a prior judgment "if it is actually raised by proper pleadings and treated as an issue in the cause . . . . But the rule goes further. If the matter was within the scope of the action, related to the subject-matter and relevant to the issues, so that it *could* have been raised, the judgment is conclusive on it despite the fact that it was not in fact expressly pleaded or otherwise urged. The reason for this is manifest. A party cannot by negligence or design withhold issues and litigate them in consecutive actions. Hence the rule is that the prior judgment is *res judicata* on matters which were raised or could have been raised, on matters litigated or litigable." (*Sutphin v. Speik* (1940) 15 Cal.2d 195, 202 [99 P.2d 652], italics in original.)

But this rule is different in the case of declaratory judgments: ■ "The judgment in an action for declaratory relief . . . should . . . be binding as to matters declared, though it is not a merger or bar." (7 Witkin, Cal. Procedure, *supra,* Judgment § 316, p. 867; *Lortz v. Connell* (1969) 273 Cal.App.2d 286, 301 [78 Cal.Rptr. 6]; see also *Dills v. Delira Corp.* (1956) 145 Cal.App.2d 124, 130-131 [302 P.2d 397].)

The reason for this is that the California statutory scheme authorizing declaratory relief allows a party to seek "a binding declaration of . . . rights or duties, whether or not further relief is or could be claimed at the time" (Code Civ. Proc., § 1060) and thus expressly reserves the right to bring a claim that was not, but could have been, raised. Indeed, to remove any doubt, the statutory provisions for declaratory relief provide that "no judgment under this chapter [for declaratory relief] shall preclude any party from obtaining additional relief based upon the same facts." (Code Civ. Proc., § 1062). Accordingly, California's statutory scheme allows a party to seek additional relief based on the same facts litigated in a prior action; application of the merger doctrine would conflict with this statutory authority.

Lest there be any question, other courts and the Restatement Second of Judgments have made the same point. The Court of Appeals in Maryland, which has statutory provisions similar to those of California, has opined: "[T]he statutory scheme expressly permits a party to bring one action requesting only a declaratory judgment and then to bring a separate action for further relief based on the rights determined by that judgment. In contrast, because res judicata precludes subsequent litigation of what could have been litigated in the first action, it requires that a party bring his entire claim, including a request for accrued damages or other relief, in one action, and prevents a second suit on the same cause of action for damages or other

relief which had accrued but were not requested at the time of the first suit. [Citations.] Consequently, the traditional principles of res judicata are inapplicable in this context, as they would prevent bringing the action for further relief that is expressly permitted [by the declaratory judgment statutes]." (*Bankers and Shippers Insurance Co. v. Electro Enterprises, Inc.* (1980) 287 Md. 641, 653 [415 A.2d 278, 285] (*Bankers*).)

The comments to section 33 of the Restatement Second of Judgments— which is considered by California courts to be persuasive authority on the issue of res judicata (see *George Arakelian Farms, Inc. v. Agricultural Labor Relations Bd.* (1989) 49 Cal.3d 1279, 1290, fn. 7 [265 Cal.Rptr. 162, 783 P.2d 749])—also explains that the different function of declaratory relief justifies the refusal to apply the merger doctrine: "A plaintiff who wins a declaratory judgment may go on to seek further relief, even in an action on the same claim which prompted the action for a declaratory judgment. . . . Nonmerger is justified by arguments based on the purpose of declaratory relief. A declaratory action is intended to provide a remedy that is simpler and less harsh than coercive relief, if it appears that a declaration might terminate the potential controversy. This idea that declaratory actions are to supplement rather than supersede other types of litigation is fortified by the provisions of the Uniform and Federal Acts for 'further relief' when necessary or proper; these provisions represent a legislative scheme antithetical to merger [citation]." (Rest.2d Judgments, § 33, com. c, p. 335.)

But this does not mean that a declaratory judgment is not conclusive as to the matters that appear on the face of the judgment. (See Code Civ. Proc., § 1911; Rest.2d Judgments, § 33, p. 332.) To the contrary, section 33 of the Restatement Second of Judgments provides that a final judgment in a declaratory relief action is conclusive as to matters declared *as well as* any issues actually litigated and determined in the action:

"A valid and final judgment in an action brought to declare rights or other legal relations of the parties is conclusive in a subsequent action between them as to the matters declared, and, in accordance with the rules of issue preclusion, as to any issues actually litigated by them and determined in the action."

The comments to section 33 make clear that a declaratory judgment is conclusive "with respect to the matters declared" in the judgment:

"b. *Preclusion as to matters declared.* If a declaratory judgment is valid and final, it is conclusive, with respect to the matters declared, as to all persons who are bound by the judgment. This conclusive effect applies even

as to a party who makes no appearance in the action. . . ." (Rest.2d Judgments, § 33, com. b, p. 334.)

 Thus, even though it is a declaratory judgment, the *Transport* judgment is conclusive as to the matters declared on the face of the judgment—that the defendant insurers "have no duty or obligation to indemnify Aerojet for any liability that Aerojet has incurred or may incur arising out of the alleged release of waste materials at or from property occupied at one time or another by Aerojet in Eastern Sacramento County."

## B.

Aerojet contends, however, that a judgment in a declaratory relief action is not entitled to "claim preclusion" effect, but only to "issue preclusion" effect based on comment e to section 33 of the Restatement Second of Judgments (hereinafter sometimes referred to as section 33). Construing section 33, Aerojet argues that the reference in that section to the judgment being conclusive "as to the matters declared" only "gives conclusive effect to declaratory judgments issued by default." It argues that even though comment e to section 33 states that "a declaratory judgment has binding effect with respect to the matters declared whether or not there has been adversary litigation" (Rest.2d Judgments, § 33, com. e, p. 337), "[c]omment e refers back to comment b, which notes that the conclusive effect of a declaratory judgment 'applies . . . as to a party who makes no appearance in the action.' "

We have carefully reviewed the comments to section 33 as well as the case law and disagree. Section 33 is not to be interpreted differently than its plain language, which is that a final declaratory judgment "is conclusive in a subsequent action between [the parties] as to the matters declared, *and,* in accordance with the rules of issue preclusion, as to any issues actually litigated by them and determined in the action." (Rest.2d Judgments, § 33, p. 332, italics added.)

Indeed, comment b to section 33 reaffirms that a declaratory judgment "is conclusive with respect to the matters declared" in the judgment, including but not limited to a party who makes no appearance in the action: "If a declaratory judgment is valid and final, it is conclusive, with respect to the matters declared, as to all persons who are bound by the judgment. This conclusive effect applies even as to a party who makes no appearance in the action. . . . [¶] . . . [¶] If the court permits a declaratory action to be maintained against a defaulting defendant, the preclusive effect of the judgment with respect to the matters declared may be viewed as a special

instance of issue preclusion without adversary contest (compare Comment e, below), or perhaps more appropriately as a limited application of the rules of merger and bar in the special context of a declaratory proceeding." (Rest.2d Judgments, § 33, com. b, pp. 334-335.)

Comment c then makes clear that a party with a declaratory judgment is free to pursue further declaratory or coercive relief as to matters *not* declared but is subject to the constraints of the determination that *has* been made:

"c. *Effects as to matters not declared.* When a plaintiff seeks solely declaratory relief, the weight of authority does not view him as seeking to enforce a claim against the defendant. Instead, he is seen as merely requesting a judicial declaration . . . . The effect of such a declaration, under this approach, is not to merge a claim in the judgment or to bar it. Accordingly, regardless of outcome, the plaintiff or defendant may pursue further declaratory or coercive relief in a subsequent action. [¶] . . . [¶] A plaintiff who has lost a declaratory judgment action may also bring a subsequent action for other relief, subject to the constraint of the determinations made in the declaratory action. The theory is the same: a declaratory action determines only what it actually decides and does not have a claim preclusive effect on other contentions that might have been advanced. . . ." (Rest.2d Judgments, § 33, com. c, pp. 335-336.)

Finally, comment e addresses issue preclusion (in contrast with com. b, which addresses "[p]*reclusion as to matters declared*") and in no way restricts the prior discussion of the conclusive effect given to the matters declared in a declaratory judgment: "e. *Issue preclusion.* As stated in Comment *b*, a declaratory judgment has binding effect with respect to the matters declared whether or not there has been adversary litigation with respect to those matters. . . . [¶] The line between the preclusion described in Comment *b* [preclusion as to matters declared] and the more limited preclusion described here [issue preclusion] is necessarily indistinct, but since default judgments in declaratory actions are relatively rare, the problem of drawing that line is not pervasive. As a general guide, it may be useful to regard the preclusive effect of a declaratory judgment rendered on default as extending only to the ultimate determinations embodied in the declaration itself, and not to all the allegations on which the declaration may rest." (Rest.2d Judgments, § 33, com. e, pp. 337-338.)

As we have noted, *ante*, Aerojet argues that "Comment e refers back to comment b, . . ." and that this reference merely "addresses the problems of defaults in declaratory judgments . . . ."

But comment e properly restates comment b (and the plain language of section 33) that "a declaratory judgment has binding effect with respect to the matters declared whether or not there has been adversary litigation with respect to those matters." (Rest.2d Judgments, § 33, com. e, p. 337.) The balance of comment e merely explains that the distinction between the binding effect of matters declared in the judgment (the first part of § 33 and the subject of com. b) and issue preclusion (the second part of § 33 and the subject of com. e) is "necessarily indistinct" (Rest.2d Judgments, § 33, com. e, p. 337)—which it most certainly is—because the matters declared in the judgment normally have been actually litigated (except in the case of default judgments), and if the issue *is* litigated, it will probably find its way into the matters declared in the judgment. Comment e therefore suggests that the distinction between matters declared in the judgment and issue preclusion may be most apparent in default judgments, which will not entail any actual litigation of the issues but whose determination will be set forth in the judgment. It thus suggests, reasonably enough, that "it may be useful to regard the preclusive effect of a declaratory judgment rendered on default as extending only to the ultimate determinations embodied in the declaration itself, and not to all the allegations on which the declaration may rest." (Rest.2d Judgments, § 33, com. e, pp. 337-338.)

In sum, section 33 of the Restatement Second of Judgments does not just limit a declaratory judgment's conclusive effect to the issues actually litigated and determined, but also gives conclusive effect to the matters stated in a declaratory judgment.[5]

---

[5]In a petition for rehearing, Aerojet argues that our interpretation of section 33 "is inconsistent with the core policy underlying the Restatement." It contends that the benefits of declaratory judgments will be undermined if they "are given both claim preclusion and issue preclusion" effect because "[i]f parties [are] afraid of being precluded later down the road, they might cram their declaratory actions with more claims than necessary, destroying the quickness and efficiency these actions lend to the process of litigation." To the contrary, it would destroy the benefits of declaratory judgments if the very language of a final judgment could be relitigated as Aerojet seeks to do here. Second, our interpretation of section 33 does not give normal claim-preclusion effect to declaratory judgments, but only preclusive effect to the matters stated in the declaratory judgment. Third, Aerojet's concern that giving effect to the matters declared in a judgment will cause the parties to add more claims to their declaratory relief actions is not well taken. Under our reading of section 33, conclusive effect will only be given to the matters stated in the declaratory judgment and to the issues actually litigated and determined—neither of which would pose any surprise to the parties if they find themselves bound by them in a subsequent action. Finally, Aerojet's position is not only contrary to the express language of section 33, but of Code of Civil Procedure section 1911, which also treats what is adjudged on the face of the judgment as binding—in addition to those issues that are actually and necessarily included in it. Code of Civil Procedure section 1911 provides: "That only is deemed to have been adjudged in a former judgment which

## C.

Still resisting this conclusion, Aerojet contends that "[a] large and consistent body of law holds that the preclusive effect of a declaratory judgment is determined by issue-preclusion principles. Neither the trial court nor the insurers cited any cases holding that the preclusive effect of a declaratory judgment would be determined instead by claim-preclusion principles. . . . [¶] . . . [E]ven though all of these cases and more hold that principles of collateral estoppel/issue preclusion apply to declaratory relief judgments, the trial court [in this case] declined to follow them."

We agree, as we have explained, that usual claim preclusion principles do not apply to declaratory judgments. But neither do the cases hold that *only* principles of issue preclusion apply to declaratory judgments, at the expense of what is declared in the judgment.

■ To the contrary, a number of cases hold that a party may not offer new reasons or theories for a position originally advanced and adversely adjudicated in a declaratory relief action, even though those new theories were not litigated. (E.g., *Bankers, supra,* 415 A.2d 278; *Harris v. Wallace* (Ky. 1971) 474 S.W.2d 878; see also *Radkay v. Confalone* (1990) 133 N.H. 294, 296-299 [575 A.2d 355, 357-358].)

In *Bankers,* the Maryland Court of Appeals held that an insurer, which received an adverse declaratory judgment over whether its policy afforded any coverage or a duty to defend, could "not now raise as defenses new theories or reasons for its contention that there was neither coverage nor a duty to defend the insured defendants . . . ." (*Bankers, supra,* 415 A.2d at p. 288.) In that case, the insurer had brought an action for declaratory relief that its insurance policy did not provide either coverage for, or an obligation to defend its insureds against, claims resulting from an airplane crash. The trial court issued a declaratory judgment that the insurer was not relieved from defending the cases. The insureds thereafter brought suit for the attorney fees and expenses incurred as a result of the insurer's disclaimer of coverage. Although the insurer argued that it should not be precluded from raising defenses not raised as reasons for denying a duty to defend and coverage in the prior declaratory relief action, the court of appeals ruled: "[The insurer] . . . argues that it should not be precluded from raising these defenses because they were not raised as reasons for denying coverage and a duty to defend in the declaratory judgment action and, consequently, were

---

appears upon its face to have been so adjudged, *or* which was actually and necessarily included therein or necessary thereto." (Italics added.)

not actually litigated therein. The fact, however, that a party offers new reasons or theories for the position originally advanced and adversely adjudicated in a declaratory judgment action, does not permit those reasons to be litigated if the result could be a determination in conflict with the matters originally declared. . . . [¶] . . . [¶] In the case at bar, [the insurer] . . . made a broad request for a determination whether its policy afforded *any* coverage or duty to defend. The declaratory judgment expressly adjudicated these matters adverse to [the insurer's] position. [The insurer] is bound by the adjudication." (*Bankers*, at pp. 287-288.)

Aerojet seeks to distinguish *Bankers* on the ground that the insurer there sought to resist the insureds' action for attorney fees on the basis of the same policy provisions that were the subject of the prior action. But, in fact, the insurer also sought to raise new theories. And the court of appeals rejected the effort: "Therefore, we hold that Bankers may not now raise as defenses new theories or reasons for its contention that there was neither coverage nor a duty to defend the insured defendants in the wrongful death actions." (*Bankers, supra,* 415 A.2d at p. 288.)

Nor do the other cases cited by Aerojet stand for the proposition that a declaratory judgment may only have preclusive effect as to the issues actually litigated, at the expense of the matters declared in the judgment. Although some of the decisions analyze the particular facts in terms of "issue" rather than "claim" preclusion, in each case, the courts merely refused to bar a claim that could have been raised but was not raised in the prior declaratory relief action—a result which comports with section 33 of the Restatement Second of Judgments and with which we agree.

For example, in *Empire Fire & Marine Ins. Co. v. J. Transport* (11th Cir. 1989) 880 F.2d 1291 (*Empire*), cited by Aerojet, the court held that a declaratory judgment providing that two insurers had to equally contribute to a judgment in a personal injury suit did not preclude a subsequent claim by an insurer that it was entitled to reimbursement from its insured under a particular policy provision. The Eleventh Circuit Court of Appeals ruled: "The issue for determination in this appeal is whether the court below properly barred Empire from litigating its claim for indemnification under the doctrine of res judicata. The [trial] court held that Empire is precluded by the principles of res judicata from litigating the issue of reimbursement because this issue *could* have been raised in the Kentucky action. . . . [H]owever, the preclusive effect of a prior declaratory proceeding should be viewed, within the usual framework of res judicata, as presenting a special problem of issue preclusion. Since the parties did not actually litigate the

issue of reimbursement in the prior declaratory action, the parties are not barred by the doctrine of res judicata from litigating this claim in the present action." (880 F.2d at pp. 1296-1297, original italics.)

Thus, despite some loose language, *Empire* merely stands for the uncontroversial proposition that declaratory judgments are not res judicata for issues that were not addressed but could have been raised. Nothing in *Empire* is contrary to section 33 of the Restatement Second of Judgments, which, in fact, is favorably cited in that case. (*Empire, supra*, 880 F.2d at p. 1296, fn. 6.)

Likewise, in *Harborside Refrigerated Services, Inc. v. Vogel* (2d Cir. 1992) 959 F.2d 368, cited by Aerojet, the Second Circuit Court of Appeals ruled that a judgment in an action for declaratory relief, which established the price to be paid to acquire real property under an option contract, did not preclude a subsequent action focused on other terms of the contract. The Second Circuit ruled that "the preclusive effect of the declaratory judgment is limited to the subject matter of the declaratory relief sought. The plaintiff or defendant may continue to pursue further declaratory or coercive relief." (959 F.2d at p. 372.)

Again, in *Horn & Hardart Co. v. National Rail Passenger Corp.* (D.C. Cir. 1988) 843 F.2d 546, cited by Aerojet, the federal court of appeals merely rejected a claim that *further* relief following a declaratory judgment was barred by res judicata: "Where a party asks only for declaratory relief, courts have limited the preclusive effect to the matters declared, hence permitting a later action seeking coercive relief based on the same cause of action." (843 F.2d at p. 549.) Hence, although the declaratory judgment in that case upheld the landlord's right to terminate three leases, the court of appeals ruled that the landlord could thereafter bring another action for further relief by which it enforced the leases' end-of-term holdover and cost-on-default clauses and was awarded damages. (*Id.* at pp. 547-549.)

Finally, in *Smith v. City of Chicago* (7th Cir. 1987) 820 F.2d 916, 919, cited by Aerojet, the Seventh Circuit Court of Appeals, in dictum, merely stated that "a declaratory action determines only what it actually decides and therefore does not have a claim preclusive effect on other contentions that might have been advanced." This statement merely distinguishes between what was decided and what could have been decided, and therefore comports with section 33 of the Restatement Second of Judgments, as we have construed it.

Accordingly, Aerojet's cases comport with section 33 of the Restatement Second of Judgments and with our conclusion. They do not permit relitigation of matters actually declared in the prior declaratory judgment.[6]

### III.

Finally, even assuming, for the sake of argument, that we should examine the record to determine the scope of the matters actually declared in the *Transport* judgment, Aerojet's present action for declaratory relief would be barred.

Aerojet argues that the instant suit involves "[d]ifferent physical sites," "[d]ifferent kinds of claims," and "[d]ifferent modes of disposal." It contends that "*Transport* tried coverage for certain activities on the 8500-acre Aerojet site" but "did not try coverage for the McDonnell Douglas site," and that "though perchlorate releases at the Aerojet site were discussed in *Transport,* they were not at issue, and thus not actually litigated." It elaborates: "Aerojet's expert Gaynor Dawson provided undisputed testimony that perchlorate was one of many chemicals detected in the groundwater, but that it had not been characterized as presenting an unacceptable level of risk."

While it is true that the *Transport* litigation focused on pollution caused by the discharge of three chemicals—TCE, EDC, and NDMA—the gravamen of the action was whether the defendant insurers had an obligation to provide coverage for all chemical releases at all disposal areas occupied by Aerojet in eastern Sacramento County. Specifically, Aerojet's complaint alleged that "[t]he insurers have received notices of claims, present and potential, . . . arising out of the alleged release of waste materials at or from property occupied at one time or other by [Aerojet] in Eastern Sacramento County, California. The claims are sometimes referred to collectively herein as 'Aerojet Sacramento Environmental Claims.' The property is sometimes referred to as the 'Aerojet Sacramento Site.' " It further alleged that the insurers were liable for indemnifying Aerojet for money it had expended and "for monies [it] has an obligation to expend in the future, as respects each such claim." The complaint then listed 35 private actions among the claims for which Aerojet sought coverage in the *Transport* action. Twelve of those actions specifically charged Aerojet with causing pollution by its disposal of ammonium perchlorate. Many of the private actions also

---

[6]Because we conclude that a declaratory judgment is conclusive as to the matters declared, but is not res judicata under the merger doctrine with respect to matters not covered in the judgment that could have been raised, we need not address Aerojet's argument analyzing primary rights, which are relevant in determining whether a second suit is based on the same cause of action as the judgment in the first suit for purposes of claim preclusion.

included a catchall allegation for harm caused from unidentified chemicals and charged that the pollution had been caused via diverse disposal methods.

Similarly, the release of waste materials on the McDonnell Douglas site was also at issue in *Transport* inasmuch as the consent decree between Aerojet and the federal government, and the action commenced against Aerojet by the State of California, each included that parcel. And as set forth in Aerojet's cross-complaint, the "Aerojet Sacramento Environmental Claims" included both private and governmental actions against Aerojet. Although Aerojet claims that the McDonnell Douglas site issues were only mentioned once during that trial, there was nothing at trial that limited the scope of the Aerojet-occupied property in eastern Sacramento County that was to be subject to the declaratory judgment.

Unquestionably, Aerojet used the broad, generic term "Aerojet Sacramento Environmental Claims" to try to obtain a broad declaration of coverage because Aerojet was aware that a variety of claims had been filed and would continue to be filed against it for pollution discovered on property owned or operated by Aerojet at one time or another in eastern Sacramento County. The *Transport* litigation became the definitive vehicle by which Aerojet sought a declaration that it was entitled to insurance coverage for all claims related to pollution on property owned or operated by it in eastern Sacramento County. Indeed, in the context of an 81-day trial, encompassing 14,000 pages in reporter's transcript, it is understandable that Aerojet would not want to repeat the process again if it could prevail the first time around. It thus would seek as broad a determination as possible.

Moreover, while pollution caused by ammonium perchlorate may not have been a focal point of Aerojet's presentation in *Transport*, defendants made ammonium perchlorate a part of their case, introducing into evidence numerous documents describing the dangers of perchlorate contamination.

Finally, both Aerojet and defendants made the question of ammonium perchlorate coverage an important part of their closing argument to the jury. In closing argument, and notwithstanding that Aerojet's position at trial was that there was no scientific evidence (at that time) that ammonium perchlorate was toxic and that Aerojet had not been, and could not have been (in light of existing technology at the time), ordered to remove ammonium perchlorate from the groundwater, counsel for Aerojet asked the jury to render a verdict that would entitle Aerojet to coverage for ammonium perchlorate contamination:

"In 1991, the Federal Government, neither it nor the California State Government, has decided whether perchlorate concentration in groundwater

beneath Aerojet is harmful and must be removed. Aerojet has yet sustained no liability for any claim of injury to any groundwater from perchlorate. That may well be, but in the future, as knowledge continues, someone may come up, some professor, some scientist, and say, 'we have now discovered that perchlorate in some concentrations is injurious.'

"If that should happen in the future and as a result Aerojet is put through the expense of cleaning that up, we want a declaration and a judgment *in this case* at that time the insurers have to take care of us on that too . . . ." (Italics added.)

For their part, defendants also asked the jury to determine the issue of coverage for ammonium perchlorate contamination:

"Now, there is a fourth chemical, ammonium perchlorate, and it's a little unclear to me what [counsel for Aerojet] believes should be done with ammonium perchlorate, because, if I heard [counsel] correctly, it's a little bit, if they win, we must pay for ammonium perchlorate though [Aerojet] hasn't submitted any evidence for ammonium perchlorate.

"The reality is, if they haven't submitted any evidence for ammonium perchlorate, they lose, because that's part of the element of their burden of proof.

"And the one thing that's clear is, if they lose, as we believe they should, they don't have an opportunity to come back and sue us again with respect to ammonium perchlorate."

In rebuttal, counsel for Aerojet agreed with the assertion made by defendants—that there would be no future lawsuit over coverage for ammonium perchlorate:

"One of the counsel for the other side said well, but, you say you have a right to sue in the future.

"In the future, it may well be that some scientist finds out that ammonium perchlorate is hurtful and somebody will claim that Aerojet is liable.

"No, *when this case is over, there will be no future lawsuit,* but no—but references are made to the fact that this suit is also a suit for declaratory relief.

"After you come in with your verdict, the court, the judge will be determining whether or not to adjudicate, if any of this happens in the future, the insurers will or will not be liable.

*"There won't be any more litigation after this one is out of the way . . . ."* (Italics added.)

In light of the foregoing, it is clear the claims asserted by Aerojet, for which it sought coverage in *Transport,* were not limited to the release of any particular chemical at any particular parcel. The complaint's allegations were broad, and the declaration sought by Aerojet was to provide coverage for future claims over the release of any waste materials, including ammonium perchlorate, on any of the properties owned or occupied by Aerojet at one time or another in eastern Sacramento County.

In short, Aerojet asked the *Transport* jury for a ruling that would be sufficiently broad in scope such that no future lawsuit about insurance coverage for any chemical pollution, *including that caused by ammonium perchlorate*, would be necessary. Accordingly, coverage for pollution caused by ammonium perchlorate, on any and all property owned by Aerojet in eastern Sacramento County, clearly was at issue and determined adversely to Aerojet in the *Transport* litigation. Aerojet's failure of proof does not translate into a failure to litigate. It is bound by the judgment that it litigated.[7]

### CONCLUSION

In the *Transport* litigation, Aerojet broadly sought coverage for claims arising out of the release of chemical waste from property that it occupied at one time or another in eastern Sacramento County. Despite Aerojet's efforts to argue that the present declaratory relief action (brought against the same insurers) seeks coverage for damage caused by a different chemical or in part at a different site in eastern Sacramento County than in the *Transport* action, it is clear from the face of Aerojet's present complaint that its coverage claims are unequivocally encompassed within the scope of the *Transport* judgment, since they arise out of—as that judgment puts it—"the alleged release of waste materials at or from property occupied at one time or other by Aerojet in Eastern Sacramento County."

Declaratory judgments are properly given res judicata effect as to those matters expressly and unambiguously declared in the judgment. Once final, they may not be collaterally attacked for a nonjurisdictional error. To do

---

[7] We need not conduct a "detailed collateral estoppel analysis" with respect to these issues, as Aerojet urges. We are not addressing collateral estoppel principles—that is, issue preclusion—but the limited *claim*-preclusion effect of a declaratory judgment, based on the matters stated in the declaratory judgment. Collateral estoppel is, in contrast, a "distinct aspect of the doctrine of res judicata." (7 Witkin, Cal. Procedure, *supra,* Judgment, § 354, p. 915.)

otherwise would be to allow a final judgment on the merits of a dispute to be collaterally attacked for an alleged error made in the exercise of the first court's jurisdiction, thereby defrocking the judgment of its finality and allowing, in effect, a second appeal.

Finally, an examination of the record underlying the *Transport* judgment shows that Aerojet sought the broad judgment it got, albeit not its substance, and it is thus bound thereby.

## DISPOSITION

The judgment is affirmed. Defendants are awarded their costs on appeal. (Cal. Rules of Court, rule 26(a).)

Sims, Acting P. J., and Callahan, J., concurred.

A petition for a rehearing was denied April 2, 2002, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied May 22, 2002. George, C. J., Baxter, J., and Chin, J., did not participate therein.