## ABEL HART *vs.* ABEL HART, Jun.

A lease of agricultural lands for twelve years, with a covenant of renewal for twelve years longer if the lessor shall live, and a further covenant to continue the renewals every twelve years so long as the lessor shall live, is good for the first twelve years, but the covenants for renewal are void as being in contravention of section 14 of article 1 of the constitution.

The covenant for renewal, being an independent covenant, may fall without impairing the grant for the first twelve years.

Where a son agreed to support and maintain his father during his life, and covenanted that if, at any time, the father *should become dissatisfied* with living with him, the son would pay all reasonable charges for the board and necessary expenses of the father; *Held* that the father had a right to quit the family of the son whenever he became dissatisfied, without showing any good excuse for leaving; and that it was for him to judge whether there was good cause for dissatisfaction.

A lease from father to son, of real estate, for a term of years, with a covenant on the part of the lessee to support the lessor, during his life, is no evidence of a settlement of accounts between the parties, so as to bar a set-off by the son, in an action by the father, upon the covenants in the lease.

THIS action was brought to recover damages for a breach of a covenant, whereby the defendant was to maintain the plaintiff through life, &c. The following is a copy of the instrument upon which the action was brought:

" This indenture, made the 9th day of March, 1849, between Abel Hart of the town of Candor and the county of Tioga, N. Y., of the first part, and Abel Hart, jr. of the same place of the

second part, witnesseth, that the said party of the first part, for and in consideration of the rents, covenants and agreements hereinafter mentioned and contained, to be paid, kept and performed on the part and behalf of said party of the second part, hath leased, demised and to farm let unto the said party of the second part, and his representatives, for and during the term of twelve years, if said party of the first part should so long live, and if not, then during the life of the said party of the first part, all the home farm of the party of the first part with the appurtenances, and also all the personal property of all kinds, except, &c., reserving therefrom two beds and bedding, &c. And the said party of the first part hereby covenants and agrees, to and with the said party of the second part, his heirs and assigns and executors and administrators, that at the termination of the said term of twelve years, if he should live so long, he will renew this lease upon the terms and conditions therein contained, for the further term of twelve years if he should so long live, and if not, then for the term of his natural life, and continue to renew the same from time to time at the end of each twelve years or as long as he shall live; and it is further covenanted and agreed between the said parties, that the balance of the hay now on hand, if any, after keeping the stock through till feeding of grass, and the teams till getting through the spring work, is to be appraised by disinterested men and to be paid by the said party of the second part and sold by him, and the avails paid to the party of the first part. And the said party of the first part hereby covenants and agrees that upon his decease all his personal property of whatsoever name or nature, as well that which is above excepted out of this lease or instrument as that which is not, except the two beds and bedsteads, bedding and bed curtains, and excepting also his money, notes, book accounts and demands, shall be the absolute property of the said party of the second part. In consideration whereof the said party of the second part hereby covenants and agrees, to and with said party of the first part and his representatives, to pay Abel H. Potter the sum of one hundred dollars on his arriving at the age of twenty-one years, and to pay to the party of the first part

the yearly rent of one hundred and fifty dollars from the date hereof at the end of each year during the continuance of this lease, and to pay all taxes assessed upon said property during said time, and also to maintain the said party of the first part through life, and to find and provide him with good and respect-able clothing and proper and reasonable board and lodging, look-ing after and providing for all his wants in sickness and in health; to procure and pay for all necessary and proper medical aid and attendance for him, and to pay all his funeral charges, and to procure and erect suitable grave stones at his grave; and if at any time said party of the first part shall become dissatisfied with living with said party of the second part, then the said party of the second part is to pay all reasonable charges for the board and necessary expenses of the said party of the first part; and if said party of the first part should not live the present year out, the party of the second part is nevertheless to pay to his representatives one full year's rent of one hundred and fifty dollars; but in other respects said rent to cease on the death of said party of the first part. And it is the express agreement of the parties to these presents, that if the yearly rent above reserved, or any part thereof, shall not be paid as above agreed, upon demand thereof, or if default shall be made in any of the covenants herein contained, on the part and behalf of the said party of the second part, his heirs, executors, administrators or assigns, to be paid, kept and performed, then and from thence-forth it shall and may be lawful for the said party of the first part to re-enter into and take possession of the demised premises and every part thereof, and to take possession of said personal property, and to hold the same free and discharged from the lease and agreement. In witness whereof," &c.

The answer, after denying the allegations of the complaint, set up a counter-claim, averring that the plaintiff was indebted to the defendant for work and labor and for personal property sold and delivered, and for money had and received, &c. and de-manded judgment for the sum of $1800. The cause was tried before referees. The evidence showed that the plaintiff had left the family of the defendant, and the defendant claimed it was

Hart v. Hart.

without any just cause, and that consequently the plaintiff could not recover. The defendant also claimed that the lease was invalid. The defendant offered to prove his counter-claim. This evidence was excluded, on the ground that the execution of the lease, by the parties, was evidence of the settlement of all accounts up to that date, and the account was all anterior to that time. The referees found the sum of $873.28 due to the plaintiff, and judgment being entered for that amount, at a special term, the defendant appealed.

*Davis & Warner*, for the appellant.

*Geo. S. Camp*, for the respondent.

*By the Court*, MASON, J. I am strongly inclined to think that this lease cannot be upheld for a longer period than twelve years, for the reason that it is against the spirit and policy of section 14 of article 1 of the constitution, which declares that " no lease or grant of agricultural land for a longer period than twelve years, hereafter made, in which shall be reserved any rent or service of any kind, shall be valid." The lease in the case at bar is for twelve years, with a covenant of renewal for twelve years longer if the lessor should live, with a further covenant to continue the renewals every twelve years so long as the lessor shall live. Leases of this kind, with a covenant of renewal, have not been treated by the courts as precarious interests. They are enforced, and a court of equity will compel a renewal. (9 *Ves.* 325. 16 *id.* 84. 14 *id.* 332. 2 *id.* 443, *n.* 4. 5 *Bac. Abr.* 677, *Bouv. ed.*) Leases of this kind are become a fund for settlements of every kind, for mortgages of every kind, for the whole term to which the renewal might extend. (5 *Bac. Abr.* 677, *Bouv. ed.*) These covenants to renew run with the land, and bind the grantee of the reversion. (4 *Kent's Com.* 109, 3*d ed.*) The lease, however, is good for the first twelve years; but the covenant of renewal is, in my judgment, in contravention of the constitution. The covenant of renewal

VOL. XXII. 77

being an independent covenant, may fall without impairing the grant for the twelve years.

The referees were right in holding that the plaintiff had a right to quit the family of the defendant whenever he became dissatisfied. The language of the covenant is, that if at any time the said party of the first part shall become *dissatisfied with living with the said party of the second part,* then the said party of the second part is to pay all reasonable charges for the board and necessary expenses of the said party of the first part. It is a case where the law will not undertake to say for the party he must be satisfied and has no right to be dissatisfied with living in this family; for the party by the express terms of his contract has made his own feelings the sole judge of the matter. Contentment and satisfaction with a man's position in a particular family, is a matter which the law will not assume to determine for him. Neither will it do the converse, and say he had no cause to be discontented and dissatisfied and therefore he cannot be regarded as dissatisfied. The agreeableness or disagreeableness of the society and state of things about him in the family are left to his own tastes and feelings to determine  If the defendant is right in the construction which he puts upon this clause of the contract, and we are to hold that the plaintiff had no right to quit without good cause arising from a neglect of the defendant to perform his duties under the contract, towards the plaintiff, then the clause of the contract is wholly superfluous, and is divested of all meaning and legal effect; for if the defendant has not performed his duty to the plaintiff, under the covenant, then the plaintiff would be justified in leaving, were there no such clause as this in the contract. The defendant's construction of this contract, therefore, deprives this clause of all legal effect whatever—an interpretation never indulged if it can be avoided.

The referees erred in rejecting the evidence offered, to prove a set-off. This lease was no evidence of a settlement of accounts between the parties, within the principle of the case of *De Freest* v. *Bloomingdale and others,* (5 *Denio,* 304,) and the other cases referred to. The lease itself shows to what trans-

actions it was intended to apply, and what matters it embraced. It is most manifest from the instrument itself that it did not embrace any thing else. It is no answer to the rejection of this evidence that the plaintiff had given some evidence tending to show that all the accounts between the parties were settled at that time. The defendant had a right to overthrow this evidence, and I think there was not even *prima facie* evidence of a settlement given, and that the defendant had a right to ask the jury to find that there was no settlement proved. There must be a new trial granted for this cause alone; costs to abide the event of the action.

[DELAWARE GENERAL TERM, July 8, 1856. *Gray, Shankland* and *Mason,* Justices.]