# IN THE SUPREME COURT OF IOWA

No. 14–2006

Filed January 22, 2016

**JOHN GANSEN** and **ELAINE BRIES,** as Trustees of the FRANCES A. GANSEN DECLARATION OF TRUST,

Appellees,

vs.

**JAMES B. GANSEN,**

Appellant.

---

Appeal from the Iowa District Court for Dubuque County, Richard D. Stochl, Judge.

A lessee appeals a district court ruling on the validity of an agricultural lease under the Iowa Constitution. **AFFIRMED.**

Andrew B. Howie of Hudson, Mallaney, Shindler & Anderson, P.C., West Des Moines, D. Flint Drake and Samuel M. Degree of Drake Law Firm, P.C., Dubuque, for appellant.

Richard W. Kirkendall and Stephen J. Juergens of Fuerste, Carew, Juergens & Sudmeier, P.C., Dubuque, for appellees.

**APPEL, Justice.**

In this case, we consider a dispute regarding a lease of land used for agricultural purposes. The substantive legal question presented by the parties is whether the terms of two five-year leases—which automatically self-renewed for four additional five-year terms unless the tenant unilaterally opted out of the lease—offend article I, section 24 of the Iowa Constitution. Article I, section 24 of the Iowa Constitution provides that no lease of agricultural lands "shall be valid for a longer period than twenty years." The district court concluded that to the extent the leases permitted Gansen to continue to lease the property beyond twenty years, the leases violated article I, section 24. Gansen appealed.

Before reaching the substantive legal question, however, we must consider whether the landlord's claim that the leases violated article I, section 24 is barred under principles of claim preclusion arising as a result of prior litigation between the parties involving the same agricultural leases.

For the reasons expressed below, we conclude that claim preclusion does not apply to bar the landlord's constitutional claim in this case. On the merits, we agree with the district court that the leases violate article I, section 24 of the Iowa Constitution to the extent they remain in effect after the passage of twenty years from their inception.

**I. Background Facts and Proceedings.**

**A. The Leases.** Francis Gansen created the Charles Gansen Trust (Trust) in December of 1996. The Trust received two tracts of farm land of 120 and 80 acres respectively. The Trust then entered into identical leases with James Gansen (James) for the two tracts commencing on March 1, 1997.

The leases provided an initial term of five years. Each lease, however, contained an "option to renew." The option to renew provided:

> This lease shall automatically renew for four additional 5-year terms unless Tenant provides notice to Landlord in writing not less than 180 days before the termination of the then current lease term, or within 30 days of the commencement of the new lease term, with tenant's election not to lease the leased property for any such additional five year term. In the event the lease term is extended pursuant to this paragraph, in all respects the lease shall continue upon the same terms and conditions provided for herein.

The leases also contained a provision related to potential rent adjustment. Specifically, the leases stated,

> [T]he annual rental due shall be adjusted each year by the mutual agreement of the parties. If the parties do not mutually agree to such adjusted rental on or before August 1 of any such year, the rental for the previous year shall apply.

Between 1997 and 2007, Gansen rented the two farms from the Trust for $120 per acre.

**B. First Round of Litigation.** Beginning in 2007, however, the trustee unsuccessfully attempted to negotiate a higher rent from James. After unsuccessful negotiations, the trustee launched the first round of litigation between the parties in 2009.

The trustee filed a declaratory action against James in three counts. Count I asserted that while the leases called for annual reconsideration of the rental rate, James had refused to cooperate in good faith. As a result, the trustee sought a declaration that James was in breach of the lease. In Count II, the trustee asserted that even if James was not in breach of the lease, the court should determine a fair rental for the lease for the year beginning March 1, 2009. Count III asked the court to conclude the leases terminated as of March 1, 2009, for failure of the parties to include a material term in the lease

agreement. James filed a series of counterclaims raising issues not germane to this appeal. *See In re Gansen,* No. 12–0106, 2012 WL 5954584, at *3 (Iowa Ct. App. Nov. 29, 2012).

The district court held pursuant to Count I that James had unreasonably refused to negotiate a reasonable rental rate, but it declined to hold that his refusal to do so constituted a breach of the agreement. With respect to Count II, the district court proceeded to establish what it saw as a fair rental rate for the property. On Count III, the court declined to declare that the leases terminated on March 1, 2009. *Id.* at *5–6.

James appealed. The court of appeals modified the district court's finding by determining that rent was due only on tillable acres, but it otherwise affirmed the judgment of the district court. *Id.* at *14.

**C. Second Round of Litigation.** Once again, the trustee and James could not arrive at an agreement for reasonable rental for the crop year commencing March 1, 2013. The trustee again filed what it styled a petition for declaratory action in November 2013.

Count I alleged that James had breached his duty of good faith by refusing to negotiate a reasonable rent and asked the court to declare reasonable rental rates for 2013 and successive years based upon the annual Iowa State University Cash Rental Rates Survey. In Count II, the trustee alleged that the leases violated the limitation of article I, section 24 of the Iowa Constitution. Count III alleged the court should declare that each of the leases was terminated pursuant to provisional notices of termination filed by the trustee on James.

James filed an answer and counterclaim. In his counterclaim, James alleged that the petition was frivolous. In addition, James

claimed Counts II and III of the petition were barred by the doctrine of res judicata.

The trustee moved for partial summary judgment on the ground that the leases violated article I, section 24 of the Iowa Constitution. The trustee asserted that, as a matter of law, the leases must terminate twenty years after their effective date, namely, on February 28, 2017. James opposed the motion, in part on res judicata grounds.

The district court granted the motion, finding that the leases violated article I, section 24 of the Iowa Constitution. The district court did not expressly address, however, the res judicata defense raised by James. James filed a motion to enlarge or amend findings. In his motion, James argued that the trustee's action was barred by res judicata. James also asked the district court to reconsider its ruling on the article I, section 24 issue. The district court denied the motion to enlarge. James appealed.

## II. Standard of Review.

We review summary judgment rulings for correction of errors at law. *Baker v. City of Iowa City*, 867 N.W.2d 44, 51 (Iowa 2015). Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Iowa R. Civ. P. 1.981(3); *Dolphin Residential Coop., Inc. v. Iowa City Bd. of Review*, 863 N.W.2d 644, 647 (Iowa 2015).

## III. Application of Claim Preclusion.

**A. Positions of the Parties.** James argues that the trustee is precluded from bringing an article I, section 24 claim in the second round of litigation between the parties. James asserts that res judicata has three elements: (1) the parties in the first and second action are the same, (2) the claim in the second suit could have been fully and fairly

adjudicated in the first suit, and (3) there was a final judgment on the merits. *Spiker v. Spiker*, 708 N.W.2d 347, 353 (Iowa 2006). He emphasizes that under our caselaw, the second claim is likely to be barred by claim preclusion when the "acts complained of, and the recovery demanded are the same or where the same evidence will support both actions." *Arnevik v. Univ. of Minn. Bd. of Regents*, 642 N.W.2d 315, 319 (Iowa 2002) (quoting *Whalen v. Connelly*, 621 N.W.2d 681, 685 (Iowa 2000)). Applying these principles, James argues that the trustee could have brought the article I, section 24 claim in the prior litigation, that the recovery demanded (i.e., termination of the leases) is the same, and that the same evidence supports both this action and the prior action.

The trustee asserts that the claims are different and that they are based upon different underlying facts. The trustee argues the earlier claims were based upon James's failure to negotiate rent in good faith for rent in 2009, resulting in the trial court entering a rental rate for the years from March 2009 through March 2013. The second round of litigation, according to the trustee, was based upon failure to negotiate reasonable rent for the crop year beginning on March 1, 2014.

The trustee further asserts that the doctrine of res judicata cannot apply to cases involving article I, section 24 of the Iowa Constitution. According to the trustee, res judicata cannot apply to extend a lease term beyond the twenty-year prohibition in the Iowa Constitution. The trustee argues that no court should enforce the terms of an illegal contract.

**B. Application of Claim Preclusion to Claim in This Case Under Article I, Section 24 of the Iowa Constitution.** We first consider whether the doctrine of claim preclusion applies under the circumstances of this case. Here, the parties are identical, there is no

doubt that the article I, section 24 claim could have been brought in the prior proceeding, and there was a final judgment on the merits in the first action. *Arnevik*, 642 N.W.2d at 319. Further, no additional evidence would have been required to litigate the constitutional question in the first proceeding, in contrast to our other cases allowing parties to litigate separate claims involving the same contract in two proceedings. *See Westway Trading Corp. v. River Terminal Corp.*, 314 N.W.2d 398, 401 (Iowa 1982) (holding claim preclusion did not foreclose plaintiff's second action even though it arose out of the same lease agreement as that of a prior action).

Although not raised by the parties, there is a substantial question as to whether claim preclusion applies in a second action when the first action between the parties is a declaratory action. The Restatement (Second) of Judgments, section 33 provides:

> A valid and final judgment in an action brought to declare rights or other legal relations of the parties is conclusive in a subsequent action between them as to the matters declared, and, in accordance with the rules of issue preclusion, as to any issues actually litigated by them and determined in the action.

Restatement (Second) of Judgments § 33 (Am. Law Inst. 1982) [hereinafter Restatement (Second)].

The rationale for declining to apply claim preclusion to declaratory judgment actions is straightforward. The purpose of declaratory actions is to provide a fast and relatively simple way to declare the rights of the parties before a situation festers or damages accumulate. *See* Restatement (Second) § 33 cmt. c ("A declaratory action is intended to provide a remedy that is simpler and less harsh than coercive relief . . . ."). By requiring joinder of additional claims, what was originally a relatively simple and straightforward action can become much more

complicated. A requirement of joinder of claims might therefore deter the effective use of declaratory actions. *See generally* Elizabeth L. Hisserich, *The Collision of Declaratory Judgments and Res Judicata,* 48 UCLA L. Rev. 159, 159–63 (2000).

Further, many declaratory actions are brought early in a potential dispute before the parties get invested in their positions. As noted by Edson R. Sunderland, the difference between a declaratory action declaring rights and a coercive action is the difference "between diplomacy and war." Edson R. Sunderland, *A Modern Evolution in Remedial Rights—The Declaratory Judgment,* 16 Mich. L. Rev. 69, 76 (1917) [hereinafter Sunderland]. The declaratory judgment vehicle allows parties to obtain the intervention of the court to resolve their differences and assist in the structuring of their affairs "before the danger has ripened into catastrophe." Edwin Borchard, *Declaratory Judgments* 21 (2d ed. 1941); s*ee also Sigal v. Wise,* 158 A. 891, 893 (Conn. 1932).

Most state and federal courts applying state law have adopted the position of section 33 of the Restatement—namely that issue preclusion, but not claim preclusion, arises from declaratory actions. *See, e.g., Jackinsky v. Jackinsky,* 894 P.2d 650, 656 (Alaska 1995); *Bankers & Shippers Ins. Co. of N.Y. v. Electro Enters., Inc.,* 415 A.2d 278, 284–85 (Md. 1980); *Radkay v. Confalone,* 575 A.2d 355, 357–58 (N.H. 1990); *State ex rel. Shemo v. Mayfield Heights,* 765 N.E.2d 345, 355 (Ohio 2002); *Okla. Alcoholic Beverage Control Bd. v. Cent. Liquor Co.,* 421 P.2d 244, 247 (Okla. 1966); *Carver v. Heikkila,* 465 N.W.2d 183, 186 (S.D. 1991). Caselaw in a number of states, however, has concluded the broader concept of claim preclusion arises from declaratory actions. *See, e.g., Smith v. Barfield,* 276 S.E.2d 899, 900 (Ga. Ct. App. 1981); *Downen v.*

*Country Mut. Ins. Co.*, 537 N.E.2d 445, 447 (Ill. App. Ct. 1989); *Hofmann v. Auto Club Ins. Ass'n,* 535 N.W.2d 529, 548 (Mich. Ct. App. 1995).

We considered the question of the preclusive impact of a first round of declaratory litigation on subsequent litigation in *Fournier v. Illinois Casualty Co.,* 391 N.W.2d 258, 259–61 (Iowa 1986). In *Fournier,* Betty Jane Fournier, in her capacity as the administrator of the estate of the deceased and in her individual capacity, brought an action against the Fraternal Order of the Eagles for the death of her minor son. *Id.* at 258–59. She established in that action that her minor son was killed by a driver who had become intoxicated from the consumption of alcohol served by the Fraternal Order and obtained judgment for the estate in the amount of $87,644.02 and in favor of the plaintiff individually as mother of her deceased son in the amount of $100,000. *Id.* at 259.

The liability insurer of the Fraternal Order tendered $50,000 to the clerk of the district court in full satisfaction of its obligation to indemnify the Fraternal Order. *Id.* The Fraternal Order then filed a declaratory action in which Fournier intervened, thus giving rise to the first round of litigation between Fournier and the insurer. *Id.* The Fraternal Order of the Eagles and Fournier argued that the insurance company owed $50,000 for each separate and distinguishable recovery for injuries to persons, one injury to the estate and the second injury to the mother. *Id.* We ruled in the declaratory judgment action that the insurance company was not required to make a further payment under the theory that Fournier, as an individual parent, was "injured in person" under the policy. *Id.*

In the second round of litigation, Fournier claimed the insurance company was required to make further indemnification payments by reason of the policy coverages related to injuries sustained as "property

damage." *Id.* In considering whether the second claim was barred, we cited verbatim the Restatement (Second), section 33, including language related to *issue* preclusion. *Id.* at 260. We then proceeded to analyze the question as if it posed a question of *claim* preclusion. *Id.* Citing the Restatement (Second), section 24, we emphasized that "[u]nder a pragmatic view of *claim preclusion*, the scope of *the claim* adjudicated in the prior litigation was whether or not the defendant had any additional responsibility under its liability insurance policy." *Id.* (emphasis added). We then, however, stated that the plaintiffs in the second litigation sought to relitigate "the same *issue*, i.e., the extent of defendant's obligation to indemnify." *Id.* (emphasis added). Finally, we declared, "We conclude that this second effort may not be countenanced under recognized principles of *claim preclusion*." *Id.* at 261 (emphasis added).

It is not entirely clear whether *Fournier* was based on issue preclusion or claim preclusion. Many cases have suggested where property and personal injury claims arise out of the same transaction, the doctrine of *claim* preclusion prohibits splitting causes of action. *See, e.g.*, *Dill v. Avery*, 502 A.2d 1051, 1052–54 (Md. 1986) (citing Restatement (Second), section 24 and holding that a claim of personal injury is precluded where there had been a previous action on damage to property arising from the same accident); *Pielhau v. State Farm Mut. Auto. Ins. Co.*, 314 P.3d 698, 701–03 (N.M. Ct. App. 2013) (citing Restatement (Second), section 24 and holding that *claim* preclusion prohibits an insured from litigating underinsured motorist coverage where in prior litigation, plaintiffs had sought to establish coverage under different policies with the insured); *Peterson v. Temple*, 918 P.2d 413, 417 (Or. 1996) (stating that *claim* preclusion prohibited plaintiff from recovering damages for personal injuries arising from an accident where plaintiff

had previously litigated property damage arising from the same accident and against the same party); *Landry v. Luscher*, 976 P.2d 1274, 1276 (Wash. Ct. App. 1999) (stating the rule against *claim* splitting—i.e., *claim* preclusion—prohibits splitting of personal injury and property claims arising out of same transaction). There is at least a question whether issue preclusion was applicable in *Fournier* as arguably the "issue" of coverage for property damage was not actually litigated in the prior proceeding. *See Hunter v. City of Des Moines*, 300 N.W.2d 121, 123 (Iowa 1981) (distinguishing "issue preclusion"—where the issue had to be actually raised and litigated in prior proceeding—from what we now call claim preclusion—where the issue "could" have been tried in prior proceeding); *Cruise v. Wendling Quarries, Inc.*, 498 N.W.2d 916, 920 (Iowa Ct. App. 1993) (holding common issue of fault was actually litigated in prior property damage suit and determined adversely to plaintiff, and therefore fault could not be relitigated in subsequent personal injury action under issue preclusion); *Am. Ins. Co. v. Messinger*, 371 N.E.2d 798, 800 (N.Y. 1977) (holding arbitration decision disallowing insurer's coverage defense binding in subsequent personal injury action where the issue was actually litigated and decided in prior action). If, however, the "issue" in the prior proceeding is more broadly characterized as the extent of insurance coverage under a single contract, issue preclusion would apply under the caselaw.[1] *Cf. Macris &*

---

[1]The relationship between claims preclusion and issue preclusion in successive lawsuits involving an insurance policy was discussed at length in *Aerojet–General Corp. v. American Excess Insurance Co.*, 117 Cal. Rptr. 2d 427, 436–42 (Ct. App. 2002). In that case, in the first round of litigation, the plaintiff, Aerojet, sought a declaration that it was entitled to insurance coverage to indemnify it for costs incurred as a result of its discharge of certain polluting chemicals. *Id.* at 430. The plaintiff did not succeed. *Id.* at 431. In the second round of litigation, the plaintiff sought a declaration regarding its right to indemnification under the same insurance policies for losses arising out of a new and separate lawsuit against it based on its discharge of other pollutants. *Id.* at

*Assocs., Inc. v. Neways, Inc.*, 16 P.3d 1214, 1222, 1224 (Utah 2000) (claims for additional contract damages beyond time frame of damages sought in original action held barred under doctrine of issue preclusion).

While the theoretical foundations of *Fournier* are not clear, we find nothing in *Fournier* that would prevent our consideration of the constitutional issue here. This case does not involve multiple claims for damages arising out of the same set of facts. Instead, it involves two different classes of claims arising under the contracts. One class of claims—those focused on the failure of the parties to reach a negotiated rent under the contracts—was ripe for a declaratory judgment in the first round of litigation. In contrast, any potential claim related to the constitutional issue was not of immediate concern and depended upon the contingency of the tenant electing to continue the leases for a period beyond twenty years.

Under these circumstances, we think the general rule under the Restatement (Second), section 33 that only issue preclusion, but not claim preclusion, applies to declaratory actions should be followed. We find merit to the observation that the difference between an action declaring rights and a coercive action is the difference between "diplomacy and war." Sunderland at 76. The purpose of declaratory actions—providing prompt and less abrasive relief to the parties—is encouraged by this limited application of res judicata concepts. We

---

431–32. The California appellate court discussed at length the difference between claim preclusion and issue preclusion, but it ultimately decided the issue on the ground that the order of the court in the first round of litigation broadly declared that the insurers "have no duty or obligation to indemnify Aerojet for any liability that Aerojet has incurred or may incur arising out of the alleged release of waste materials at or from property occupied at one time or another by Aerojet in Eastern Sacramento County . . . ." *Id.* at 437. The California appellate court specifically disclaimed reliance on "issue preclusion." *Id.* at 440.

therefore conclude that the trustee is not barred from bringing his claim under article I, section 24 by the previous declaratory action involving a different contractual issue related to good-faith negotiations regarding rental rates. *Hunter*, 300 N.W.2d at 123.

**IV. Application of Article I, Section 24 to the Lease in This Case.**

**A. Introduction.** In this case, the leases in question provided for an initial five-year term with five additional five-year terms, which arise automatically unless the lessee serves a notice of termination. The lessor seeks a determination that the leases violate article I, section 24 of the Iowa Constitution to the extent that the leases may continue for a period beyond twenty years.

**B. Background to Article I, Section 24.** Article I, section 24 of the Iowa Constitution provides, "No lease or grant of agricultural lands, reserving any rent, or service of any kind, shall be valid for a longer period than twenty years."

The historical materials related to this constitutional provision are sparse. A similar provision was not contained in the Iowa Constitution of 1846. Rufus L.B. Clarke proposed the provision at the Iowa Constitutional Convention of 1857 based on a provision in the New York Constitution of 1846. *See* 1 *The Debates of the Constitutional Convention of the State of Iowa* 213 (1857) (reporting remarks of Mr. Clarke of Henry County: "I have copied [the provision], in substance, from the constitution of the State of New York."). Clarke noted the purpose of the New York provision was to address "the occurrence of anti-rent difficulties in that state." *Id.* New York had a history of long-term leases on manorial land that caused considerable and sometimes violent unrest between lessors and lessees. *See* Note, *Iowa Constitution—Twenty-Year*

*Limitation on Agricultural Leases*, 39 Iowa L. Rev. 486, 487 (1954).  There is no further discussion of the provision in the debates over the 1857 Iowa Constitution.

Although they appear to have similar purposes, the language of the New York constitutional provision is different than that of the one adopted in Iowa.  The New York provision stated:

> No lease or grant of agricultural land, for a longer period than twelve years, hereafter made, in which shall be reserved any rent or service of any kind, shall be valid.

N.Y. Const. art. I, § 14 (1846).

Interestingly, New York has discarded the provision in its current constitution.  *See* N.Y. Const. art. I, § 10 (repealed 1962) (repealing the provision on agricultural leases, which had been renumbered as article I, section 10 in 1938).  Constitutional provisions similar to the New York precursor and to Iowa's version of it may be found in Minnesota and Wisconsin.  *See* Minn. Const. art. I, § 15 ("Leases and grants of agricultural lands for a longer period than 21 years reserving rent or service of any kind shall be void."); Wis. Const. art. I, § 14 ("Leases and grants of agricultural land for a longer term than fifteen years in which rent or service of any kind shall be reserved . . . are declared to be void.").  A number of states, including California, have a similar statutory restriction.  *See* Cal. Civ. Code § 717 (2015).

**C. Caselaw from Other States.**  The caselaw from other jurisdictions is sparse as well.  There is a trilogy of cases out of New York.  In *Hart v. Hart*, a tenant, the son of the lessor, claimed that a lease of farm land for twelve years with a covenant to renew for twelve more years if the lessor should live violated New York's constitutional limitation on agricultural leases.  22 Barb. 606, 606 (N.Y. Gen. Term

1856). The New York court upheld the initial twelve-year lease, but found the renewal provision for additional twelve-year terms during the life of the lessor invalid under the New York constitutional provision. *Id.* at 609.

In *Clark v. Barnes,* a lessor challenged the validity of two leases signed simultaneously for twelve years from the date of execution and for the eight years after the execution of the first lease, asserting the leases were void as an attempt to evade the constitutional limitation. 76 N.Y. 301, 303–04 (1879). The New York court found a constitutional violation, noting that the two leases were executed "at the same time, upon the same consideration, as parts of the same transaction, and upon precisely the same terms." *Id.* at 304.

Finally, in *Parthey v. Beyer,* the lessor brought an action seeking to declare an agricultural lease invalid because of the length of its term. 238 N.Y.S. 412, 413 (App. Div. 1930). The lessor had executed a five-year agricultural lease with a tenant, but prior to its expiration, he signed a second lease for an additional ten-year period. *Id.* The New York court held that because the new lease was executed prior to the expiration of the prior instrument, it was an extension and was void under the constitutional provision. *Id.* at 415.

California courts have considered questions regarding the validity of leases contrary to a statute limiting the length of lease terms. In *Kendall v. Southward,* a lessor brought a declaratory action seeking a declaration that a lease "at a specified rental for the term of the natural life of the [lessor]" was void. 308 P.2d 915, 916 (Cal. Ct. App. 1957). The court, however, held that the lease was not void from its inception but was valid until the expiration of the statutory period and void thereafter. *Id.* at 917.

In another California case, *Klepper v. Hoover*, the California appellate court considered a declaratory action brought by a tenant regarding the validity of a ten-year lease with an option to renew for another ten years. 98 Cal. Rptr. 482, 483 (Ct. App. 1971). The court treated the lease as a ten-year lease with an option to renew. *Id.* at 485. While California law limited agricultural leases to twenty years at the time the lease was executed, the law was amended to allow leases up to fifty-one years before the option was exercised. *Id.* at 483. The court concluded the validity of the additional ten-year term should be evaluated under the law at the time the option was exercised, not the law at the time of execution of the underlying lease. *Id.* at 485.

**D. Iowa Caselaw.** The first Iowa case in which article I, section 24 was implicated is *Benschoter v. Hakes*, 232 Iowa 1354, 1355, 8 N.W.2d 481, 483 (1943). In *Benschoter*, the lessor brought a quiet-title action regarding farmland in which the defendant claimed an interest pursuant to the lease. *Id.* The lease term ran from September 26, 1940, until February 26, 1942. *Id.* Although the lease term had expired, the defendant claimed a right to continued tenancy until March 1, 1943, because the lessor failed to give notice of termination of the lease on or before November 1, 1941, as provided by an Iowa statute. *Id.* We noted that the law cannot operate to extend the lease beyond a term of twenty years within the prohibition of article I, section 24. *Id.* at 1364, 8 N.W.2d at 487.

In 1979, we decided *Casey v. Lupkes*, 286 N.W.2d 204, 207 (Iowa 1979). In *Casey*, trustees under the will of the lessor challenged the validity of an agricultural lease that, in addition to termination for default, provided for termination in forty-five years or on February 28

following either the death or disability for one year of the lessees, whichever occurred first. *Id.* at 205.

We contrasted article I, section 24 of the Iowa Constitution with article I, section 14 of the New York Constitution of 1846. *Id.* at 205–06. The New York provision stated that no agricultural lease for a period of longer than twelve years "shall be valid." In contrast, the Iowa restriction provides that no agricultural lease "shall be valid for a longer period than twenty years." *Id.* at 206. As a result, we concluded in *Casey* that the lease was valid for a period of twenty years from its effective date and invalid only as to the excess. *Id.* at 207.

**E.  Analysis.** The above caselaw provides some guidance for our determination of the question posed in this case: namely, whether a lease for five years with five additional five-year renewal periods at the option of the tenant violates article I, section 24. Under *Casey*, a lease that potentially lasts longer than twenty years is not invalid from its inception, but only becomes invalid after the expiration of a twenty-year period. *Id.* Thus, the question in this case is not whether the leases were invalid at their inception, but only whether they will become invalid after the expiration of twenty years.

The leases in this case provide for automatic renewals every five years but allow the tenant to opt out of the lease by providing required notices. Thus, while the landlord may be locked into the leases for a twenty-five-year period, the tenant is not. To the extent article I, section 24 is designed to protect tenants, an argument can be made that the underlying policy of article I, section 24 is not offended by the leases in this case.

It seems clear that historically, article I, section 24 was intended in large part to protect agricultural tenants who suffered due to oppressive

long-term relationships with established landlords. Yet, the language of article I, section 24 does not run solely in favor of the tenant. The language instead is couched in more general terms and does not distinguish between the interests of landlords and tenants. While the language obviously is sufficiently broad to protect tenants from being locked into oppressive leases, it also appears to advance the larger purpose of promoting the alienation of agricultural lands by not excluding landlords from its terms. It is well established that a broadly framed constitutional provision should not be narrowly interpreted in a fashion that limits its application to the specific mischief at hand. *Weems v. United States*, 217 U.S. 349, 373, 30 S. Ct. 544, 551, 54 L. Ed. 793, 801 (1910). Because one of the parties may be locked into these agricultural leases for more than twenty years, we conclude that article I, section 24 will be offended if that contingency occurs.

Our holding that article I, section 24 may be enforced by lessors as well as lessees is consistent with the prevailing caselaw. In *Casey*, the trustees of the lessor's will brought the action. *Casey*, 286 N.W.2d at 205. Similarly, in cases from other jurisdictions, limitations on the term of agricultural leases have been enforced at the behest of lessors. *Clark,* 76 N.Y. at 301*; Parthey,* 238 N.Y.S. at 413.

We also conclude the fact that the leases provide the tenant with an option to renew does not save the leases from constitutional infirmity after the passage of twenty years. Here, as to the lessor, the lease created a potentially binding twenty-five year obligation. Under *Casey,* we conclude that such a lease is valid for twenty years but is constitutionally infirm after the twenty-year period has expired.

We do not regard dicta in *Benschoter* as authority for a contrary proposition. In *Benschoter,* either party to the lease could terminate it.

232 Iowa at 1364, 8 N.W.2d at 487. Here, only one party, the tenant, could terminate the lease prior to the expiration of the full twenty-five-year period.

We wish to make it clear that nothing in this opinion limits the possibility of the parties themselves mutually agreeing to renew a lease for an additional period of time. Article I, section 24 does not prohibit all landlord–tenant relationships that exceed twenty years. It only prohibits *a lease* for agricultural purposes that continues in effect for more than a twenty-year term.

**V.  Conclusion.**

For the above reasons, the judgment of the district court is affirmed.

**AFFIRMED.**