# IN THE COURT OF APPEALS OF IOWA

No. 21-0470
Filed August 3, 2022

**JEFFREY ENGLAND, LARRY ENGLAND and CHARLOTTE ENGLAND,**
     Plaintiffs-Appellees,

**vs.**

**STATE OF IOWA ex rel., IOWA DEPARTMENT OF TRANSPORTATION,**
     Defendant-Appellant.
_____

     Appeal from the Iowa District Court for Wapello County, Crystal S. Cronk,

Judge.

     The Iowa Department of Transportation (DOT) appeals the district court's

denial of the DOT's motion for summary judgment. **REVERSED AND

REMANDED.**


     Thomas J. Miller, Attorney General, and Matthew S. Rousseau, Assistant

Attorney General, for appellant.

     Nathan A. Olson and Christine E. Branstad of Branstad & Olson Law Office,

Des Moines, for appellees.


     Considered by May, P.J., and Schumacher and Badding, JJ.

**SCHUMACHER, Judge.**

This opinion addresses the second appeal concerning a 2016 land auction by the Iowa Department of Transportation (DOT). The DOT appeals the district court's denial of the DOT's motion for summary judgment. We determine the breach-of-contract claim instituted by Jerry, Larry, and Charlotte England (the Englands) is barred by their previous litigation. Accordingly, we reverse and remand for entry of summary judgment for the DOT.

## I. Background Facts & Proceedings

The facts underlying this appeal were recited by this court in a 2019 decision:

> The DOT owns the parcel of land at issue in this appeal. In 2016, the DOT decided to dispose of the parcel by auction. The DOT opened the auction to the owners of the three abutting pieces of property: Jon and Cheryl Simparcel, Kurt and Carol Anderson, and Jeffrey England. The DOT sent the owners of each abutting parcel a letter and a bidding form. The letter stated that "Iowa DOT policy allows a purchase preference for all abutting owner(s) of land to be sold." The letter stated it would give preference to bids that equaled or exceeded the fair market value of the parcel, which the DOT determined was $45,000. The bid form stated that to submit a valid bid the bidder must include a check with the returned form. The form also pre-printed $45,000 as the default bid amount: "I herewith submit an unconditional offer of $45,000 to the [DOT] for the purchase of the following land[.]" Finally, the form stated "The [DOT] reserves the right to waive any technicalities and to reject any or all bids or offers."
>
> The Andersons returned a completed form. The bid form offered $45,000 and was accompanied by a check for the same amount. Jeffrey England also submitted a form. Jeffrey's bid form left the pre-printed bid amount of $45,000. However, Jeffrey's bid was accompanied by a check signed by his parents, Larry and Charlotte, in the amount of $51,016. After the Andersons learned another party was interested in the property, they increased their bid to $50,000. The bidding period then closed.
>
> Subsequently, the DOT called Jeffrey. The exact substance of that phone call is not in the record. Jeffrey contends he was "informed he was the high bidder for the parcel." According to the

agency, Jeffrey "was informed that the check from Larry and Charlotte England for $51,016 was the highest offer, and that there were discrepancies between the Offer to Buy Jeffrey England signed and the check received from Larry and Charlotte England." Jeffrey was also allegedly informed "the DOT would need to send a new Offer to Buy form to Larry and Charlotte England, to be signed so that the offer would match the check."

On the same day, the DOT also called Charlotte. It is unclear exactly what transpired during this phone call. According to the DOT, Charlotte was "informed of the discrepancies between the Offer to Buy that Jeffrey England signed and the check received from Larry and Charlotte England." She was also told "that [the DOT] would be mailing her paperwork, including a new Offer to Buy, to be signed by Larry and Charlotte England, so that the offer would match the check."

Finally, the DOT sent the Andersons a letter that explained that their bid was unsuccessful. The DOT also returned the Andersons' uncashed check.

Shortly after, the DOT attempted to mail Charlotte and Larry the original, voided bid form that Jeffrey had submitted. The DOT also sent a blank bid form and a note that said, "Cross off the amount of $45,000.00 and write in $51,016.00 above it and initial. Fill in name as Larry England and Charlotte England. Please sign and date as 3-18-16." However, because of a clerical error, the DOT inadvertently sent the forms to the Andersons instead of Charlotte and Larry.

After the Andersons were inadvertently mailed the letter intended for Larry and Charlotte, the Andersons' attorney contacted the DOT regarding the potential sale of the property. The Andersons raised concerns that the land was being sold to parties who were not abutting landowners. They requested "an opportunity for an open auction of the property with the abutting land owners identified in your disposal notice." In response to the Andersons' concerns, the DOT reviewed the matter and concluded that the sale of the land should not go forward. The DOT issued Charlotte and Larry a check refunding their payment. The DOT also sent letters to all abutting landowners, informing them that the sale would be cancelled and the DOT would reinitiate the bidding process at a later time.

In response, the Andersons and the Englands petitioned for a declaratory order. The Englands claimed the DOT was contractually bound to sell the land to Jeffrey or, in the alternative, the DOT was contractually bound to sell the land to Larry and Charlotte. The Andersons claimed they were the sole abutting landowners to place a valid bid and they were therefore entitled to the property.

In response, the DOT issued a declaratory order, determining that it had not erred in cancelling the auction and that it had not entered into an enforceable contract with Jeffery or Charlotte and

Larry England. Both the Andersons and the Englands appealed to the district court. The district court affirmed.

*Anderson v. State ex rel. Iowa Dep't of Transp.*, No. 17-1276, 2019 WL 1055720, at *1–2 (Iowa Ct. App. Mar. 6, 2019). On appeal, we affirmed. *Id.* at *1.

Our previous opinion noted that "[i]n the preprinted forms mailed to the potential bidders, the DOT made explicitly clear that it reserved the right 'to reject any or all bids and offers.' This reservation of rights was not qualified or limited in any respect." *Id.* at *3. Accordingly, "nothing in the solicitation prevented the DOT from canceling the auction. . . . That wholly discretionary decision was certainly within its purview." *Id.* Our court noted that the DOT lacked the authority to determine whether there was a valid contract between itself and another party. *Id.* at *2. Instead, "to the extent the parties seek a declaration of contract rights, their respective remedies lie in the district court and not within the very agency allegedly a party to the contract." *Id.*

The Englands initiated the instant action on November 19, 2019, filing a petition in district court. The petition claimed the DOT breached the contracts it made with both Jeffrey and with Charlotte and Larry. The Englands requested specific performance to convey the land. The DOT moved for summary judgment, alleging that the Englands' claim was barred by their previous lawsuit, which culminated in the *Anderson* decision.

The district court denied the DOT's motion for summary judgment. The court noted that, "[u]nder typical circumstances," it would find claim preclusion based on the decision of the district court in *Anderson*. However, the court found that the Englands "did not have a full and fair opportunity to litigate the claim in the

district court proceeding" because of the more stringent evidentiary rules and because "the district court did not make independent or de novo findings." The DOT applied for interlocutory appeal and request for stay, which our supreme court granted.

## II.      Standard of Review

We review summary judgment rulings for corrections of errors at law. *Villarreal v. United Fire & Cas. Co.*, 873 N.W.2d 714, 719 (Iowa 2016). "Summary judgment is appropriate only if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law." *Id.*; *see also* Iowa R. Civ. P. 1.981(3). "[W]e examine the record in the light most favorable to the nonmoving party to determine if the moving party has met its burden." *Pavone v. Kirke*, 807 N.W.2d 828, 832 (Iowa 2011).

## III.      Discussion

The DOT asserts the Englands' claims are barred by the previous litigation that culminated in the *Anderson* decision. "The general rule of claim preclusion holds that a valid and final judgment on a claim bars a second action on the adjudicated claim or any part thereof." *Id.* at 835. The doctrine prevents a party from taking a "second bite" at the same litigation. *Bennett v. MC No. 619, Inc.*, 586 N.W.2d 512, 517 (Iowa 1998). "[C]laim preclusion will apply 'not only to matters actually determined in an earlier action but to all relevant matters that could have been determined.'" *Pavone*, 807 N.W.2d at 835 (quoting *Penn v. Iowa State Bd. of Regents*, 577 N.W.2d 393, 398 (Iowa 1998)). Therefore, "[c]laim preclusion may preclude litigation on matters the parties never litigated in the first claim." *Id.*

## A.    Claim Preclusion & Agency Declaratory Orders

As a preliminary matter, the parties disagree on whether the administrative decision is entitled to a preclusive effect.[1]  Both parties cite *Ghost Player, LLC v. Iowa Department of Economic Development*, 906 N.W.2d 454 (Iowa 2018).  In that case, our supreme court recognized Iowa's adoption of section 83 of the Restatement (Second) of Judgments, which notes that administrative actions ordinarily do not carry preclusive effect unless they were made via processes that contain the "essential elements of adjudication."  *Ghost Player*, 906 N.W.2d at 462–63.  The court explained:

> The Restatement (Second) provides that "the essential elements of adjudication" include adequate notice, the right of a party "to present evidence and legal argument" in support of the party's contentions, and "to rebut evidence and argument by opposing parties."  Other essential elements of adjudication include "[a] formulation of issues of law and fact in terms of application of rules with respect to specified parties," a "rule of finality," and "[s]uch other procedural elements as may be necessary to constitute the proceeding a sufficient means of conclusively determining the matter in question."
> A comment to section 83 explains its rationale.  According to the comment,
>> Where an administrative agency is engaged in deciding specific legal claims or issues through a procedure substantially similar to those employed by courts, the agency is in substance engaged in adjudication.  Decisional processing using procedures whose formality approximates those of courts may properly be accorded the conclusiveness that attaches to judicial judgments.

---

[1] The Englands also claim there is an important distinction between declaratory orders, which offer prospective relief, and traditional contract claims, which offer retrospective relief.  *See Int'l Union, United Auto, Aerospace, Agric. & Implement Workers of Am. v. Iowa Dep't of Workforce Dev.*, No. 00-2112, 2002 WL 1285965, at *2 (Iowa June 12, 2002).  However, that distinction serves little purpose here.  The Englands base both claims on the same conduct and ask for the same relief.  Thus, while their claims technically have different orientations, that difference does not alter our conclusion.

*Id.* at 463 (citations omitted).

The court noted, "Short of a formal, contested case hearing, there exists a sliding scale of formality and procedure in other agency actions." *Id.* at 465. The court ultimately found that the process the Iowa Department of Economic Development (IDED) utilized was not entitled to preclusive effect because neither the legislature nor the agency established procedures that included procedural rights similar to traditional adjudications:

> These agency actions were imbued with informality. Ghost Player did not have a right to, nor was it provided, any kind of hearing where it was allowed to present arguments and the IDED would be required to respond to the arguments. Ghost Player was permitted, at the agency's discretion, to present documents and attempt to persuade the IDED to grant tax credits, but the IDED was not required to make formal findings of law and fact in response to Ghost Player. The lack of procedural rights and trial-type opportunities to present evidence and argument strongly weighs against applying res judicata in this case on behalf of either Ghost Player or IDED.
>
> Further, the IDED action granting tax credits was not a proceeding in which two parties contest facts and law before an agency decision-maker in an adversarial proceeding. Adjudications are ordinarily a three-cornered proposition, with contesting parties jousting before a passive third-party tribunal. Here, the parties were binary. There were no adversaries making arguments and proving their cases before a third party as is generally required for adjudication. The IDED staff were acting more like tax accountants than adjudicators.

*Id.* at 466.

The DOT asserts the agency decision concerning the cancellation of the auction is entitled to preclusive effect. They contend, "[A] final adjudicatory decision of an administrative agency such as the Commission is entitled to res judicata effect as if it were a judgment of a court." *City of Des Moines Police Dep't*

*v. Iowa C.R. Comm'n*, 343 N.W.2d 836, 839 (Iowa 1984) (citing *Toomer v. Iowa Dep't of Job Serv.*, 340 N.W.2d 594, 598 (Iowa 1983)).

Having reviewed the sliding scale of formality in relation to the administrative decision, we determine that the administrative decision was an adjudication that is entitled to preclusive effect.[2] An administrative proceeding was conducted on a lengthy record, followed by an order with written findings. Both sides were represented at the agency level and at hearing on the petition for judicial review. The determination that the DOT was within its authority to cancel the auction carries preclusive effect.

### B.    Full and Fair Adjudication

To establish claim preclusion, the DOT must show: "(1) the parties in the first and second action are the same parties or parties in privity, (2) there was a final judgment on the merits in the first action, and (3) the claim in the second suit could have been fully and fairly adjudicated in the prior case." *Pavone,* 807 N.W.2d at 836. Here, the parties only contest the third element—whether this claim could have been adjudicated in the previous litigation.[3]

---

[2] *See* 17A.9(7) ("A declaratory order has the same status and binding effect as any final order issued in a contested case proceeding."); *Sierra Club Iowa Chapter v. Iowa Dep't of Transp.*, 832 N.W.2d 636, 647 (Iowa 2013) ("Subsection (7) assures that declaratory rulings are (i) judicially reviewable, (ii) binding on the petitioner, the agency, and other parties to the declaratory proceeding, unless reversed or modified on judicial review, and (iii) have the same precedential effect as contested cases.' (quoting Arthur Earl Bonfield, *Amendments to Iowa Administrative Procedure Act, Report on Selected Provisions to Iowa State Bar Association and Iowa State Government* 1–8 (1998)).

[3] We agree the first two elements have been met. The parties in this action are the same as in the first case, thus meeting the first element. "On the merits" means "[a] judgment based on the evidence rather than on technical or procedural grounds." *Peppmeier v. Murphy*, 708 N.W.2d 57, 64 (Iowa 2005) (alteration in original). The *Anderson* court, as well as the district court below it, found the DOT

"To determine whether the claim in the second suit could have been fully and fairly adjudicated in the prior case, that is, whether both suits involve the same cause of action, this court must examine: '(1) the protected right, (2) the alleged wrong, and (3) the relevant evidence.'" *Id.* at 837 (quoting *Iowa Coal Mining Co. v. Monroe Cnty.*, 555 N.W.2d 418, 441 (Iowa 1996)). Our supreme court has noted a distinction between the *same* cause of action and *related* causes of action:

> [A single cause of action] connotes a natural grouping or common nucleus of operative facts. Among the factors relevant to a determination whether the facts are so woven together as to constitute a single claim are their relatedness in time, space, origin, or motivation, and whether, taken together, they form a convenient unit for trial purposes. Though no single factor is determinative, the relevance of trial convenience makes it appropriate to ask how far the witnesses or proofs in the second action would tend to overlap the witnesses or proofs relevant to the first. If there is a substantial overlap, the second action should ordinarily be held precluded. But the opposite does not hold true; even when there is not a substantial overlap, the second action may be precluded if it stems from the same transaction or series.

*Id.* (quoting Restatement (Second) of Judgments § 24 cmt. B, at 199 (1982)).

Here, the Englands raise the same claim as in their previous litigation related to the validity of the contract. *Anderson*, 2019 WL 1055720, at *2. The Englands' claim rests on the same alleged wrong perpetrated by the DOT—the violation of their alleged contract when the DOT cancelled the land auction. Similarly, in both the first case and this one, the Englands request specific performance, compelling the DOT to deliver title to the land. Finally, the evidence for both claims would be the same: the bidding form and subsequent bids, DOT policies, and phone calls between the parties.

---

had not violated the Iowa Administrative Procedure Act, rendering a decision on the merits. *See Anderson*, 2019 WL 1055720, at *3.

The Englands highlight a sentence that comes from our decision in *Anderson*. In it, our court declined to reach the contract claim, noting, "To the extent the parties seek a declaration of contract rights, their respective remedies lie in the district court and not within the very agency allegedly a party to the contract." *Id.* at *2. The Englands emphasize this sentence as demonstrating that their contract claims could not have been brought in the previous litigation because the DOT administrative action could not render a decision on the validity of its own contract. The district court relied on this sentence as well in denying the DOT's motion for summary judgment.

While our court stated it was not considering the contract claims, we noted the following:

> In the letter sent to the potential bidders, the DOT stated it was soliciting offers from abutting owners for the purchase of the land. The letter made clear that any offers were for "consideration" by the DOT "prior to offering the property for public sale." In the preprinted forms mailed to the potential bidders, the DOT made explicitly clear that it reserved the right "to reject any or all bids or offers." This reservation of rights was not qualified or limited in any respect. There was thus nothing in the solicitation that prevented the DOT from canceling the auction. Here, the DOT determined there was too much confusion to move forward with this particular auction and decided to start over. That wholly discretionary decision was certainly within its purview.

*Id.* at *3.

Our prior opinion found that the DOT did not violate the Administrative Procedure Act because it had informed the abutting landowners that the forms were merely for the consideration of the DOT and that it could refuse any and all bids. *Id.* As a result, there was nothing preventing the DOT from rejecting all bids

and starting over. Our court's determination was that the Englands had submitted bid or offer that could be, and was, rejected by the DOT. *See id.*

This determination comports with the purpose of claim preclusion by preventing the Englands from multiple attempts to achieve their desired result. It would be inconsistent to hold on the one hand that the DOT could cancel the land auction, while on the other hand finding that the auction was complete and the DOT was bound by contract with the Englands. Simply put, those propositions cannot both be true. The DOT could not be within its authority to cancel bids or offers and also have formed a contract on the basis of such a bid or offer. This would require a disregard of the previous court of appeals decision.

During oral arguments, questions also arose over the applicability of *Lambert v. Iowa Department of Transportation.*, 804 N.W.2d 253 (Iowa 2011). That case noted, "A clear signal from a court that it did not intend its decision to have preclusive effect on a specific claim should be honored." *Lambert*, 804 N.W.2d at 259. However, the Englands, through counsel, expressly disavowed any reliance on that case.[4] In any event, the case is distinguishable from the

---

[4] We also note the Englands do not raise any argument that the Restatement (Second) of Judgments, section 33 applies to prevent the DOT from raising the doctrine of claim preclusion. This section provides that a "valid and final judgment in an action brought to declare rights or other legal relations of the parties is conclusive in a subsequent action between them as to the matters declared, and, in accordance with the rules of issue preclusion, as to any issues actually litigated by them and determined in the action. Our supreme court adopted section 33 in *Gansen v. Gansen*, 874 N.W.2d 617, 623 (Iowa 2016), holding

> the general rule under the Restatement (Second), section 33 that only issue preclusion, but not claim preclusion, applies to declaratory actions should be followed. We find merit to the observation that the difference between an action declaring rights and a coercive action is the difference between "diplomacy and war." The purpose of declaratory actions—providing prompt and less abrasive relief to the

present claim. The district court in *Lambert* expressly referenced an on-going action between the same parties when it dismissed Lambert's claim. *Id.* at 257–58. That reference proved to be an important factor in the supreme court's decision, as the *Lambert* court explained, "[C]ritical to our resolution of this case is the language in the [first case's] dismissal order that indicated the proceedings in [the second case] would continue." *Id.* at 258. In contrast, there was no on-going proceeding at the time of *Anderson*, and as such the court's reference to the appropriate forum for a contract claim could be read as advice to litigants in general as it could be read as instructions to the Englands. Accordingly, *Anderson*'s discussion of contract claims was not "[a] clear signal" that the court did not intend for its decision to have preclusive effect. Here, we are left with a determination that the DOT was within its authority to cancel the auction and bids. The sentence highlighted from our prior decision noted only that the agency could not determine whether a contract existed, and did not comment on the merits of a contract claim.

The previous litigation precludes the Englands' present contract claim, and as such is a second action "on the adjudicated claim or any part thereof." With the cancellation of the bids, the Englands would be unable to prove an element of a contract claim. The district court erred in denying the DOT's motion for summary

---

parties—is encouraged by this limited application of res judicata concepts.

The DOT makes clear in its reply brief that it is only relying on the doctrine of claim preclusion, not issue preclusion. Thus, while section 33 could be applicable to this dispute, we choose not to resolve that question on our own without the benefit of briefing from the parties on the issue, which is not free from doubt. *Cf. Gansen*, 874 N.W.2d at 620 (applying section 33 even though it was not raised by the parties).

judgment. We reverse and remand for entry of summary judgment for the State of Iowa, ex rel.*,* DOT. [5]

**REVERSED AND REMANDED.**

Badding, J., concurs; May, P.J., dissents.

---

[5] The Englands raise several constitutional issues in the brief. We have reviewed the same and reject those arguments.

**MAY, Presiding Judge** (dissenting)

The majority's opinion is thoughtful and thorough. But I think our decision in *Anderson v. State ex rel. Iowa Department of Transportation*, No. 17-1276, 2019 WL 1055720, at *3 (Iowa Ct. App. Mar. 6, 2019), only adjudicated the *statutory* question of whether the Iowa Department of Transportation (DOT) "violated the Iowa Administrative Procedure Act, Iowa Code chapter 17A (2016)" by cancelling the auction. *Anderson* did not adjudicate the separate *common law* question of whether the DOT's actions had created or breached a contract. *See* 2019 WL 1055720, at *2. Indeed, *Anderson* said the contract-rights issue could only be decided in a different case. *Id.* *Anderson* explained that, "To the extent the parties seek a declaration of contract rights, their respective remedies lie in the district court . . . ." *Id.* Given *Anderson*'s apparent direction that the parties must take their contractual dispute to district court, I cannot conclude *Anderson* barred the parties from bringing this contract case in district court. So I would affirm the district court's denial of summary judgment. I respectfully dissent.